JOURNAL ENTRY and OPINION
{¶ 1} Plaintiffs-appellants, Khaled and Deema Tabbaa (the "Tabbaas"), appeal the common pleas court's decision denying their motion to set aside the settlement agreement and its decision adopting terms of a settlement agreement. Finding no merit to this appeal, we affirm.
 {¶ 2} This is the Tabbaas' third appeal involving the underlying case. The Tabbaas filed suit in November 1999 against the defendants-appellees, John C. Koglman, Trustee of The Koglman Family Trust, and Irene Koglman, (collectively, "Koglman"), alleging, inter alia, a claim for breach of their commercial lease. Koglman counterclaimed against the Tabbaas for breach of the lease agreement.
 {¶ 3} The matter proceeded to trial and resulted in a jury verdict in July 2001 in favor of Koglman, with an award of $225,000 based on the counterclaim.
 {¶ 4} On August 16, 2001, Koglman initiated proceedings in aid of execution of the judgment. On August 17, a certificate of judgment was filed in Cleveland Municipal Court, as well as an affidavit and notice of garnishment.
 {¶ 5} On August 20, the common pleas court conducted an evidentiary hearing on certain post-trial motions, including Koglman's request for attorney fees. Prior to the completion of the hearing, the parties reached a settlement in the presence of Judge Ralph McAllister. The parties further recited the terms of the agreement on the record.
 {¶ 6} During the course of the settlement discussion, neither party mentioned the garnishment action in municipal court. In the instant appeal, the Tabbaas contend that they were not aware of any such action. Koglman argues that although they never mentioned that an action had been commenced, they thought that the Tabbaas would have been notified by the municipal court and given the opportunity to challenge the collection proceeding.
 {¶ 7} On September 5, 2001, Key Bank issued a letter to the Tabbaas notifying them that certain funds had been garnished from two bank accounts. Koglman's counsel received notice of this attachment on September 12, through a letter from the Tabbaas' counsel. Koglman's counsel immediately responded, informing the Tabbaas that no post-settlement collection proceeding had been pursued and that he was surprised that they never received notice from the court. On September 26, Koglman's counsel wrote to the Tabbaas' counsel, offering to amend the settlement agreement to include language addressing the funds that had been attached. The Tabbaas refused to sign the proposed settlement agreement.
 {¶ 8} Subsequently, both parties moved to enforce the settlement agreement. Koglman argued that the Tabbaas delayed in reviewing their draft of the settlement agreement and then made unreasonable demands as to the specific wording of the document. Koglman further argued that the Tabbaas refused to sign the agreement and tender payment of $300,000 on October 4, 2001, the date provided in the trial court's order and the settlement agreement.
 {¶ 9} In contrast, the Tabbaas argued that they reached a settlement agreement with Koglman on August 20, 2001, and that the terms recited on the record constituted the agreement. They refused to sign the agreement drafted by Koglman because it allegedly contained terms materially different from those discussed at the hearing. Specifically, they refused to accept the release language in the agreement. They argued that they had only agreed to release Koglman from any claim pertaining to the underlying suit, arising before the day of the settlement agreement, i.e., August 20. They contended that they still had a right to pursue an action for breach of the settlement agreement as a result of the garnishment. However, the Tabbaas never raised any issue pertaining to fraud as grounds to set aside the settlement agreement. To the contrary, they fervently advocated the enforcement of the settlement agreement.
 {¶ 10} On October 16, 2001, the trial court adopted the settlement agreement drafted by Koglman and stated, inter alia:
"1. On August 20, 2001, the parties reached a settlement agreement inthe presence of the Court and recited the terms of the SettlementAgreement upon the record;
 "2. The Settlement Agreement and Release attached hereto fairly andaccurately encompasses the material terms of the Settlement Agreementthat the parties reached on August 20, 2001;
 "3. Any additional provisions contained in the attached SettlementAgreement and Release are ordered by the Court as being fair andequitable and within the Court's discretion in the enforcement of theAugust 20, 2001 Settlement Agreement;
"* * *
"5. All requests by either party for interest, sanctions or attorneyfees are denied. All other relief requested in either parties' Motions,except as set forth herein, are denied."
 {¶ 11} From this decision, the Tabbaas appealed to this court. SeeTabbaa v. Koglman, Cuyahoga App. No. 80376, 2002-Ohio-5328 ("Tabbaa I"). They argued that the trial court abused its discretion by adding new and different terms to the settlement agreement and that it failed to conduct the necessary hearing.[1] This court found that the trial court was required to conduct a hearing regarding the disputed terms in the settlement agreement, i.e., the release, the identity of the parties, and the indemnification clause. We reversed the trial court's decision and remanded the matter for a hearing.
 {¶ 12} Eight days before the scheduled hearing, the Tabbaas moved to set aside the settlement agreement on the basis of fraud. They argued that the garnishment proceeding, coupled with Koglman's failure to disclose the action at the time of settlement constituted fraud. They claimed that the 45-day grace period was an "absolutely critical" factor and a "material inducement" to their consent to the settlement agreement. Had they known that Koglman planned to garnish their accounts prior to the expiration of the 45 days, they never would have agreed to the settlement. They further claimed that, despite the fact that the terms of the settlement expressly stated that the action ended on August 20, 2001, Koglman proceeded with the garnishment of their accounts the following day. They claimed that their credit rating and their relationship with their banks had been damaged as a result of Koglman's fraudulent activities.
 {¶ 13} On January 23, 2003, the trial court held a hearing pursuant to our remand.[2] Ultimately, the trial court denied the Tabbaas' motion to set aside the settlement agreement and issued an order enforcing the settlement agreement and adopting the terms drafted by Koglman. Judge Mannen's order mirrored Judge McAllister's earlier order with the exception that she awarded Koglman $41,000 in interest on the $300,000 settlement at the statutory rate of 10% per annum, beginning on October 4, 2001.
 {¶ 14} The Tabbaas appeal, raising five assignments of error.
 Standard of Review {¶ 15} The standard of review to be applied to a ruling on a motion to enforce a settlement agreement depends primarily on the question presented. If the question is a factual or evidentiary one, the trial court's finding will not be overturned if there was sufficient evidence to support such a finding. Chirchiglia v. Adm'r, Bureau of Workers'Comp. (2000), 138 Ohio App. 3d 676, 679. On the other hand, if the issue is a question of contract law, reviewing courts must determine whether the trial court's order is based on an erroneous standard or a misconstruction of the law. Continental W. Condominium Unit Owners Assn.v. Howard F. Ferguson, Inc., 74 Ohio St. 3d 501, 502, 1996-Ohio-158. Because the instant case involves factual determinations by the trial court as to the parties' intent surrounding a settlement agreement, this court should apply the more deferential standard. Moreover, in Tabbaa I,
supra at ¶ 32, this court held that the applicable standard of review is an abuse of discretion on a motion to enforce a settlement agreement.
 Motion to Set Aside Settlement Agreement {¶ 16} In their first assignment of error, the Tabbaas argue that the trial court erred in failing to conduct an evidentiary hearing on their motion to set aside the settlement agreement. They claim that the trial court was required to conduct a hearing because they disputed the existence of a valid settlement agreement. In their second assignment of error, they claim that the trial court abused its discretion in denying their motion because the agreement was fraudulently procured. However, both of these arguments lack merit.
 {¶ 17} First, pursuant to the law of the case doctrine, the trial court properly refused to conduct a hearing on the Tabbaas' motion to set aside the settlement agreement. The law of the case doctrine provides that the "decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." Pipe Fitters UnionLocal No. 392 v. Kokosing Constr. Co. Inc., 81 Ohio St.3d 214, 218,1998-Ohio-465, citing Nolan v. Nolan (1984), 11 Ohio St.3d 1, 3. InNolan, supra, the Ohio Supreme Court explained the doctrine, by stating:
" * * * the rule is necessary to ensure consistency of results in acase, to avoid endless litigation by settling the issues, and to preservethe structure of superior and inferior courts as designed by the OhioConstitution. * * *
 "In pursuit of these goals, the doctrine functions to compel trialcourts to follow the mandates of reviewing courts. * * * Thus, where at arehearing following remand a trial court is confronted with substantiallythe same facts and issues as were involved in the prior appeal, the courtis bound to adhere to the appellate court's determination of theapplicable law. * * * Moreover, the trial court is without authority toextend or vary the mandate given." Id. [citations omitted].
 {¶ 18} In Tabbaa I, we reversed the trial court's order and remanded the case for the sole purpose of conducting a hearing on the motions to enforce the settlement agreement. Thus, the mandate of this court required the trial court to conduct a hearing regarding the material terms of the settlement agreement, which implicitly prohibits the setting aside of the settlement agreement. Allowing the Tabbaas to raise a new issue, totally contradicting the arguments they raised on appeal inTabbaa I, Tabbaa II, and throughout the course of the litigation, contradicts the law of the case doctrine.
 {¶ 19} Moreover, we find that the Tabbaas have waived any argument pertaining to setting aside the settlement agreement. As stated above, the Tabbaas never raised any issue concerning fraud at the trial level prior to our decisions in Tabbaa I and Tabbaa II, even though the alleged basis of the fraud was known to them. In fact, the Tabbaas sought the enforcement of the settlement agreement. Their motion to set aside the agreement was untimely and served no purpose but to further delay the resolution of this case. As a result, we find no abuse of discretion in the court's denying their motion and refusing to hold a hearing.
 {¶ 20} The first and second assignments of error are overruled.
 Terms of the Settlement Agreement {¶ 21} In their third assignment of error, the Tabbaas argue that the trial court erred by enforcing an agreement which included additional terms and parties not discussed in the original settlement agreement. We disagree.
 {¶ 22} When parties voluntarily enter into an oral settlement agreement in the presence of the court, the agreement constitutes a binding contract. Spercel v. Sterling Industries, Inc. (1972),31 Ohio St.2d 36, 60 Ohio Op.2d 20, 285 N.E.2d 324, paragraph one of the syllabus. To be enforceable, an oral settlement agreement requires no more formality and no greater particularity than any other binding contract. Barstow v. O.U. Real Estate, II, Inc., Athens App. No. 01CA49, 2002-Ohio-4989, citing Spercel, supra, at 39.
 {¶ 23} When presented with a motion to enforce an oral settlement agreement, the trial court may enforce the agreement only if it determines that the parties intended to be bound by the material terms.Litsinger Sign Co. v. American Sign Co. (1967), 11 Ohio St.2d 1, 14. Such a determination is made from "the parties' manifestations as reasonably interpreted in the light of all the circumstances." Barstow, supra at ¶ 40. Once it is determined that the parties intend to be bound by a settlement agreement, "the court should not frustrate this intention, if it is reasonably possible to fill in some gaps that the parties have left, and reach a fair and just result." Litsinger, supra, citing 1 Corbin on Contracts, 400 to 406, Section 95; 1 Williston on Contracts (3 Ed.), 110 and 111, Section 37. As this court noted in Tabbaa I, supra:
"`Short of laboriously hammering out a handwritten agreement in courtthe preferred process is to agree to settle on condition that thelanguage (rather than the terms themselves) can be agreed to in the nearfuture * * *. In the event that a party fails to make a good faithattempt to agree on the language the trial judge can (after hearing)determine the terms and construct a reasonable journal entry outliningthe agreement.'"
 {¶ 24} Tabbaa, 2002-Ohio-5328, ¶ 34, quoting Tepper v. Heck (Dec. 10, 1992), Cuyahoga App. No. 61061.
 {¶ 25} Furthermore, "the court's obligation to give effect to the intent of the parties means sometimes supplying those terms which reasonably carry out what the parties agreed to." Fitzgibbons v.Schmutte (Nov. 10, 1999), Cuyahoga App. No. 75126.
 {¶ 26} In this assignment of error, the Tabbaas do not dispute that a valid contract was formed between the parties on August 20, 2001. Rather, they contend that the trial court erroneously included terms beyond the scope of the agreement made on the record. However, a review of the record reveals that the trial court adopted terms consistent with the parties' intentions.
 {¶ 27} The Tabbaas first contend that the trial court erroneously included additional parties in paragraph 1(b) of the settlement agreement while failing to name attorneys David Corrado and Edward Heffernan as released parties. Paragraph (1)(b) provides:
"(b) The term `TABBAA PARTIES' shall refer to the TABBAAS, Dana'sFamily Restaurant, Delight Deli Restaurant, Inc., and Delite Deli Restaurant, for and on behalf of themselves and the affiliates,subsidiaries, predecessors, attorneys, insurers, indemnitors,indemnities, successors and assigns of each of them."
 {¶ 28} We find that competent evidence exists demonstrating that the parties reasonably contemplated including the business entities owned by the Tabbaas as parties to the settlement agreement. At the August 20, 2001 hearing, the parties expressly stated that the settlement agreement would be the end of all litigation arising from the underlying breach of lease case. The Tabbaas' suggestion that their former and/or existing business entities should still be able to maintain an action against Koglman contradicts the clear intention of the parties. Further, because the Tabbaas were in privity with the business entities, they had the authority to settle on their behalf.[3]
 {¶ 29} To the extent the Tabbaas argue that the settlement agreement erroneously added "Mirwan Tabbaa" as a party, we do not find that name included in the settlement agreement, nor do the Tabbaas indicate where the name is included. As a result, we find this argument lacks merit.
 {¶ 30} Finally, contrary to the Tabbaas' argument, their attorneys are included as "released parties." Under both the definition for "Tabbaas" and "Tabbaa Parties," the attorneys are referenced. The mere fact that the definition does not specifically name David Corrado or Edward Heffernan is immaterial. Obviously, they fall within the meaning of the word "attorneys." Similarly, the preceding paragraph defines "Tabbaas" as including their attorneys.
 {¶ 31} Next, the Tabbaas argue that the trial court abused its discretion by finding that they intended to indemnify Koglman for any claims pertaining to the equipment and fixtures contained in the building. The record reveals that the Tabbaas promised Koglman that they would take title to everything that remained on the premises. The Tabbaas failed to inform Koglman that the equipment and fixtures belonged to other third parties. At the January 23, 2003 hearing, Koglman's counsel revealed that most of the equipment that had been in the building was returned to the proper third parties. The real concern was identifying which fixtures or remaining equipment belonged to third parties. Further, the indemnification clause protects Koglman in the event a third party files suit concerning the equipment or fixtures. Given the fact that the Tabbaas represented that they "owned" the equipment and fixtures by virtue of purporting to give title of the items to Koglman, the indemnification clause is just and equitable.
 {¶ 32} The Tabbaas also argue that the plain and unambiguous language of the settlement agreement provided for a release of all claims ending on August 20, 2001. As a result, they contend that the inclusion of language releasing any claim pertaining to the garnishment action is erroneous. However, the garnishment proceeding was instituted on August 16, 2001. Thus, even if this court was to accept the Tabbaas' argument that the release only governed claims ending on August 20, the release would also include the garnishment action in municipal court, which was filed to execute the original judgment.
 {¶ 33} Finally, the Tabbaas argue that "none of the warrants (sic) found in paragraph 13 were bargained for or memorialized on August 20, 2001." We find that these warranties are standard in settlement agreements and that their inclusion is just and equitable.
 {¶ 34} The third assignment of error is overruled.
 Post-Judgment Interest {¶ 35} In their fourth assignment of error, the Tabbaas argue that the trial court erred in awarding post-judgment interest on the $300,000 judgment. They argue that interest was prohibited under R.C. 1343.03
because the amount was never "due," based on this court's reversal inTabbaa I. They further contend that interest is improper because they filed a supersedeas bond in the full amount of the $300,000 judgment in December 2001.
 {¶ 36} R.C. 1343.03 governs the award of post-judgment interest and states:
"(A) In cases other than those provided for in sections 1343.01 and1343.02 of the Revised Code, when money becomes due and payable upon anybond, bill, note, or other instrument of writing, upon any book account,upon any settlement between parties, upon all verbal contracts enteredinto, and upon all judgments, decrees, and orders of any judicialtribunal for the payment of money arising out of tortious conduct or acontract or other transaction, the creditor is entitled to interest atthe rate per annum determined pursuant to section 5703.47 of the RevisedCode, unless a written contract provides a different rate of interest inrelation to the money that becomes due and payable, in which case thecreditor is entitled to interest at the rate provided in that contract."
 {¶ 37} Further, R.C. 1343.03(B) specifically allows for post-judgment interest to be computed as follows:
"Except as provided in divisions (C) and (D) of this section, intereston a judgment, decree, or order for the payment of money rendered in acivil action based on tortious conduct shall be computed from the datethe judgment, decree, or order is rendered to the date on which the moneyis paid."
 {¶ 38} In addressing the award of post-judgment interest, the Fifth Appellate District in Sargent v. Owen (June 22, 1998), Stark App. No. 98CA00028, explained:
"R.C. 1343.03 automatically bestows a right to post-judgment interestas a matter of law. State, ex rel. Shimola v. Cleveland(1994), 70 Ohio St.3d 110, 112, citing Testa v. Roberts(1988), 44 Ohio App.3d 161. Post-judgment interest is required to bepaid even if the party entitled thereto fails to request it or the trialcourt's entry awarding judgment fails to order a losing party's duty topay it. Wilson v. Smith (1993), 85 Ohio App.3d 78, 80. The purpose ofpost-judgment interest is to guarantee a successful plaintiff the judgmentwill be paid promptly, and to prevent a judgment debtor from profiting bywithholding money belonging to the plaintiff. Lovewell v. PhysiciansIns. Co. of Ohio (1997), 79 Ohio St.3d 143.
 "The fact the prevailing party appealed from a judgment rendered in itsfavor does not, of itself, toll the accrual of post-judgment interestunder R.C. 1343.03. Viock v. Stowe-Woodward Co. (1989), 59 Ohio App.3d 3.The determinative issue is not which party appealed, or which partyappealed first, but rather which party has the use of the money during thependency of the appeal. Weber v. Weber, 1998 Ohio App. LEXIS 549 (Feb.11, 1998), Summit App. No. CA18355, unreported, citing Braun v. Pikus(1995), 108 Ohio App.3d 29. Post-judgment interest continues to accrueduring the pendency of an appeal, absent proof of waiver or conduct onthe part of the prevailing party estopping it from claiming interest,such as bad faith or want of diligence in prosecution of the appeal.Moore v. Jock (1993), 90 Ohio App. 3d 413, 416; Viock, supra, at 5;Warren/Sherer Div. v. Store Equip. Co., Inc., 1984 Ohio App. LEXIS 10931(Sept. 27, 1984), Franklin App. No. 84AP-41, unreported. Absent waiver orestoppel on the part of the prevailing party, the judgment debtor bearsthe burden of stopping the accumulation of post-judgment interest pendingappeal, which can only be effectuated by tendering unconditional paymentin full of the judgment rendered against it. Braun, supra,108 Ohio App. 3d at 32-33; Moore, supra, at 416; Viock, supra, paragraph 2 ofsyllabus. Justification for this rule lies in the fact a judgment debtormay opt to either (1) tender payment in full to toll the running of theinterest, or (2) retain use of the money and, presumably, invest it forthe duration of the appeal, making that money of, at least, equal valueto the legal rate of interest. Braun, supra, at 32."
 {¶ 39} In the instant case, the Tabbaas argue that the trial court was prohibited from awarding interest because they posted a supersedeas bond. They claim that because they filed the full $300,000 judgment with the clerk of courts, they did not have "use" of the money, and, therefore, interest was not warranted. This argument is unpersuasive for several reasons.
 {¶ 40} First, the Tabbaas offer no authority in support of this argument. Second, courts consider the question of which party has "use" of the funds when the prevailing party appeals a judgment. The doctrine serves to protect a party's right to pursue an appeal on its judgment. Otherwise, parties would be discouraged from pursuing an appeal if they would lose interest on their judgment. Finally, the Tabbaas could have avoided the accrual of interest by tendering payment to Koglman, rather than to the court. The filing of the bond served only to stay the underlying case. However, we find no authority to support the Tabbaas' claim that the bond operates to deny a prevailing party interest.
 {¶ 41} The fourth assignment of error is overruled.
 Ex Parte Letter {¶ 42} In their last assignment of error, the Tabbaas claim that they were denied due process by Koglman's mailing of an "ex parte" letter to the court following the evidentiary hearing. They argue that the trial court incorrectly relied on this information in rendering its decision.
 {¶ 43} The record reveals that Koglman mailed a letter to the court as a means of supplementing the exhibits offered at the evidentiary hearing. They also included a proposed journal entry. Although Koglman's failure to submit this information in the form of a motion was improper, we find no prejudice by the letter. The Tabbaas were sent a copy of the letter, and therefore they were not denied due process. Furthermore, excluding the information provided in the letter and attachments, there is ample competent, credible evidence in the record supporting the trial court's decision. Thus, we find no prejudice.
 {¶ 44} Accordingly, the final assignment of error is overruled.
Judgment affirmed.
It is ordered that appellees recover of appellants the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, A.J. Concurs; Karpinski, J. Dissents; (See SeparateDissenting Opinion)
[1] During the appeal, the Tabbaas never alleged that the settlement agreement was fraudulently procured. Additionally, while this appeal was pending, the Tabbaas requested that the municipal court release the funds that had been garnished from their bank accounts (approximately $37,000). They argued that the basis of the original matter had been settled and dismissed. Thus, they never disputed the existence of a settlement agreement. After the municipal court denied the Tabbaas' motion for release of the funds, they appealed to this court. We dismissed the appeal for lack of a final appealable order. See Tabbaa v.Koglman, Cuyahoga App. No. 83215, 2004-Ohio-2706 ("Tabbaa II").
[2] The case was reassigned to Judge Ann Mannen because she was originally assigned the case.
[3] At the evidentiary hearing, the Tabbaas objected to the inclusion of Dana's Restaurant on the basis that they never owned the restaurant. Koglman disagreed and requested permission to supplement the record to demonstrate that the Tabbaas had an ownership interest. Subsequently, Koglman submitted evidence in the form of a tax return, demonstrating that the Tabbaas had an ownership interest. Although Koglman mailed this information to the court without actually filing and making it part of the record, the Tabbaas do not dispute on appeal that they had an ownership interest.
 DISSENTING OPINION