OPINION
{¶ 1} This case arises from a foreclosure action filed by Appellant, Wells Fargo Bank Minnesota, NA, as trustee for registered holders of Option One Mortgage Loan Trust 2000-D, against Appellee, Thomas C. Schmid.
 {¶ 2} On September 25, 2000, Appellee executed a note and "open-end mortgage" to Option One Mortgage Corporation for $92,000, with an 11.75% interest rate. (Complaint, Exh. A, Note.) Appellee defaulted on this note and mortgage on December 1, 2003, and Appellant subsequently filed its complaint for foreclosure seeking the unpaid balance of $90,726.48 plus interest at the contractual rate. Appellant also sought reimbursement for advances for real estate taxes, insurance premiums, and property protection and maintenance pursuant to the mortgage deed. (Complaint, Exh. B, Mortgage.).
 {¶ 3} Appellant eventually sought and was granted summary judgment as a matter of law. On appeal, it argues that the trial court failed to award it damages pursuant to the terms of the parties' agreement, including the contractual rate of interest and money owed for advances.
 {¶ 4} The record reflects that Appellant filed its motion for summary judgment on October 6, 2004. It was prematurely granted two days later on October 8, 2004; Appellee had yet to respond. Thus, the trial court set aside its initial entry granting Appellant summary judgment, and provided Appellee leave until September 23, 2005, to respond to the motion for summary judgment.
 {¶ 5} Appellee failed to file a motion in opposition and the trial court again granted Appellant summary judgment as a matter of law. The decision provided in *Page 2 
part that Appellant was to recover, "$90,726.48 plus interest at 11.75% from December 1, 2003 to the date of this entry and then at the legal rate thereafter." (Sept. 29, 2005, Judgment Entry.) The decision made no reference as to the advances also sought by Appellant.
 {¶ 6} On June 28, 2006, the trial court issued a Judgment Entry confirming the sale of the property and ordering distribution of the proceeds of sale. It ordered in part that the sheriff pay the clerk of courts $4,361.01, the Columbiana County Treasurer $1,213.28, the Columbiana County Recorder $64.00, and that Appellant was to receive the balance of the proceeds of $121,367.71. The trial court also ordered the cancellation of the mortgage. However, this June 28, 2006, decision was subsequently vacated and set aside by the trial court. (July 13, 2006, Judgment Entry.) Apparently and this is unclear from the record, the trial court vacated this confirmation order to give Appellant an opportunity to redeem the property.
 {¶ 7} Following a July 21, 2006, hearing, which may have been set to determine whether Appellee could redeem the property, the trial court issued yet another Judgment Entry on July 24, 2006, confirming the sale of the property and ordering distribution of the proceeds. This time, the court stated that Appellant was not to receive its share of the distribution until further order of the court. On August 16, 2006, Appellant filed a motion requesting a hearing on the issue of the amount owed Appellant and requesting interest at the rate of 11.75%. The trial court denied this motion. *Page 3 
 {¶ 8} Appellant filed a second motion for a hearing to determine the amount of its distribution. (Sept. 25, 2006, Motion for Hearing to Determine Amounts Due Plaintiff.) On that same date, the trial court ordered distribution to Appellant in the amount of $113,902.75, and ordered that the balance of the funds be disturbed to Appellee. (Sept. 25, 2006, Judgment Entry.) Appellant's second motion for a hearing on this issue was denied in yet another entry filed the following day, September 26, 2006. The trial court indicated in the entry of the 26th that the judge had signed an entry supposedly embodying the parties' agreement as to distribution that was presented to the court by Appellees' counsel. The trial court was evidently referring to the September 25, 2006, Order and Judgment Entry, which Appellant's counsel refused to sign.
 {¶ 9} On October 4, 2006, the trial court issued yet another Order and Judgment Entry Nunc Pro Tunc setting forth the manner in which the funds were to be disbursed. It ordered in part the payment of $113,902.75 to Appellant and the balance of the funds in the amount of $7,386.96 to Appellee Schmid. This order did not indicate the interest rate or the formula the court used to ascertain the amount to be paid to Appellant. It also did not indicate whether this award included amounts allegedly owed to Appellant for advances.
 {¶ 10} Appellant timely filed its notice of appeal on October 10, 2006, from the trial court's October 4, 2006, September 29, 2006, September 25, 2006, and September 26, 2006 Judgment Entries, which granted summary judgment, awarded *Page 4 
damages, and denied requests for an evidentiary hearing. Appellee has not filed a response with this Court.
 {¶ 11} On December 4, 2006, we stayed the disbursement of the funds to Appellee Schmid pending the outcome of this appeal; however, the funds were evidently removed by Appellee prior to the filing of our order.
 {¶ 12} Based on the limited and somewhat confusing record before this Court, it appears that the trial court was advised that the parties entered an agreement relative to the rate of interest to be paid to Appellant after summary judgment was granted. This agreement is not found in the record. The record also does not indicate whether this alleged agreement encompassed Appellant's claim for money owed for advancements made pursuant to the mortgage. On appeal, Appellant specifically denies entering into any kind of agreement with Appellee regarding the interest rate to be calculated on the mortgage amount. Appellee also denies that it agreed to accept $113,902.75 as payment in full and forego the reimbursement of its advances. Appellee states that at all times, it aggressively pursued its claim for reimbursement of advances pursuant to the mortgage contract.
 {¶ 13} Appellant argues that the trial court abused its discretion in determining the amount it was owed in the distribution of the proceeds of sale. Appellant claims that the trial court erred when it failed to determine and award advancements owed and failed to calculate interest pursuant to the terms of the note. Appellant claims that the trial court also erred in reducing the rate of interest on the debt from the contract rate. Appellant points out that the trial court's final distribution award did not *Page 5 
conform to the court's prior entries on the same subject matter. Appellant asks this Court to reverse and remand this case for a hearing during which the trial court should determine the total amount due in advancements made by Appellant, and for interest to be awarded at 11.75% pursuant to the note as opposed to the statutory rate. For the following reasons, we find merit in Appellant's assignments of error and reverse and remand this case for clarification of the record and further proceedings consistent with this Opinion.
 {¶ 14} In Appellant's four assignments of error on appeal it claims:
 {¶ 15} "The Trial Court erred as a matter of law in not determining the correct amount due the Plaintiff/Appellant which would have included advanced county real estate taxes, property preservation/inspections and other charges as permitted in the note and mortgage.
 {¶ 16} "The Trial Court erred as a matter of law in ordering the distribution without a determination of the correct amount due Plaintiff/Appellant without a hearing or opportunity afforded to Plaintiff/Appellant to demonstrate same.
 {¶ 17} "The Trial Court erred as a matter of law in its distribution entry as a previous court finding, judgment or order granted Plaintiff/Appellant advancements and interest at the note rate.
 {¶ 18} "The Trial Court erred as a matter of law in awarding Plaintiff-Appellant post-judgment interest at the legal rate of 5.00% instead of at the rate of 11.75% as provided for in the written contract (Note) signed by Defendant-Appellee." *Page 6 
 {¶ 19} Appellant alleges that our standard of review in this case is de novo, since the interpretation of a written contract is a question of law. Sherman R. Shmoot Co. of Ohio v. Ohio Dept. of Adm. Serv. (2000),136 Ohio App.3d 166, 172, 736 N.E.2d 69. Thus, it claims we should make a review independent of the trial court and give no weight to his finding on appeal.
 {¶ 20} We must note, however, if the question on review is factual or evidentiary concerning the parties' intent in reaching a settlement agreement, the trial court's findings should not be disturbed if they are supported by sufficient evidence. Tabbaa v. Koglam, 8th Dist. No. 84539, 2005-Ohio-1498, ¶ 15.
 {¶ 21} The record reveals that Appellant was granted summary judgment on September 29, 2005, and awarded, "$90,726.48 plus interest at 11.75% from December 1, 2003 to the date of this entry and then at the legal rate thereafter." (Sept. 29, 2005, Judgment Entry.) This entry did not mention advances allegedly owed to Appellant by Appellee.
 {¶ 22} As Appellant alleges, the note executed by Appellee on September 25, 2000, provides for interest to be paid at the annual rate of 11.75% before and after any potential default by Appellee. (Complaint, Exh. A, Note, paragraph 2.) Further, the mortgage provided for the return of payments made for advances with respect to the property: "Advances to Protect Security. This Security Instrument shall secure the unpaid balance of advances made by Lender, with respect to the Property, for the payment of taxes, assessments, insurance premiums and costs incurred for the protection of the Property." (Complaint, Exh. B, Mortgage, p. 5, paragraph 23.) The *Page 7 
mortgage agreement also provided for the reimbursement of any and all costs, to the extent permitted by law, incurred by the lender or trustee. (Complaint, Exh. B, Mortgage, p. 5, paragraph 28.)
 {¶ 23} There is no evidence disputing the terms of this note or mortgage agreement. Thus, it appears that Appellant should have been awarded interest at the 11.75% rate pursuant to the parties' contract until the judgment was satisfied plus any amount owed for advancements made by Appellant with respect to the property. However, the common pleas court entry appears, at least, to reflect that the parties entered a post-summary judgment agreement as to the applicable interest rate contrary to the written agreement.
 {¶ 24} As earlier stated, the trial court held a hearing following the sale in foreclosure on July 21, 2006. The docket reflects that this hearing was set, apparently, to give Appellee the opportunity to redeem the property from foreclosure before confirmation and distribution. The trial court's entry issued following this hearing indicates that the trial court judge was advised that the parties had reached an agreement as to the interest rate in this case, and that they would calculate the amounts due and payable from the proceeds of the sale of the property. (Aug. 18, 2006, Judgment Entry.) This entry states in part,
 {¶ 25} "At the [July 21, 2006,] confirmation hearing in this matter the Court informed the plaintiff of it's [sic] position concerning the interest rate that the Court had granted in the judgment. The parties entered into discussions and the Court was informed that the parties hadreached an agreement about what the interest rate *Page 8 should be charged [sic] and that the figures would be calculated by theparties. The Court therefore confirmed the sale based on that belief.
 {¶ 26} "Plaintiffs remedy is by way of motion to set aside the judgment in this case, reopen the entire case or appeal." (Emphasis added.) (Aug. 18, 2006, Judgment Entry.)
 {¶ 27} Ordinarily a court of appeals should not interfere with a trial court's decision confirming a settlement agreement made in its presence. However, the trial court's judgment entry in this case is unclear. It indicates a belief that the parties agreed to an interest rate and that they would submit the figure at a later time pursuant to the agreed upon rate. However, the trial court's entry fails to detail the parties' agreement and it fails to indicate if it was advised of the actual agreed interest rate or rates. The entry does not state how or by whom it was informed of an agreement or that an agreement was reached in its presence. The entry also does not include a reference as to whether the parties' alleged agreement addressed the advances and expenses allegedly owed to Appellant.
 {¶ 28} The trial court's docket reflects that the July 21, 2006, hearing was recorded by a court reporter. However, there is no indication that it was ever transcribed, and it is not part of the record on appeal. The praecipe Appellant filed with this Court indicates that no transcript was required. (Oct. 10, 2006, Praecipe for Transcript of Proceedings.) When directly questioned at oral argument, Appellant's counsel stated that this hearing related solely to Appellee's motion to redeem, and *Page 9 
that any transcript would not and could not refer to any alleged agreement, as no such agreement existed.
 {¶ 29} In Wesbanco Bank Barnesville v. Balcar (Dec. 21, 2001), 7th Dist. No. 00-BA-36, we concluded in part that, "when parties voluntarily enter into an agreement in the presence of the court the agreement is a binding contract." Id. at 3, citing Spercel v. Sterling Industries,Inc. (1972), 31 Ohio St.2d 36, 285 N.E.2d 324, paragraph one of the syllabus. Thus, "as long as the trial court had sufficient evidence before it as to the terms of the settlement, we will not reverse its decision to enforce the settlement." Wesbanco, supra.
 {¶ 30} In Wesbanco, the plaintiff filed suit against Frank Balcar and his son Mark seeking to recover money due on a note. Frank filed a counterclaim, and Wesbanco subsequently dismissed Mark from the suit. The parties later agreed to settle their respective claims at a mediation hearing with Frank paying Wesbanco $67,500. Id. at 1. However, a court reporter was not available to record the parties' agreement, so the parties agreed to reduce the agreement to writing and file it with the court. This is where the problem arose. Frank believed that the release would include a release of any and all claims by Wesbanco against Mark, but would not include the release of Mark's potential claims against Wesbanco. Wesbanco apparently believed the agreement entailed mutual releases between itself and Mark. Id. Thereafter, the trial court determined based on the evidence at the hearing that the parties' settlement agreement did not involve any releases between Wesbanco and Mark. *Page 10 
 {¶ 31} On appeal, Frank alleged that the trial court erred as to the terms of the settlement agreement. We upheld the enforcement of the parties' agreement based on the trial court's findings and citations to testimony elicited at the hearing. Id. at 3. In reaching our decision, we quoted the Ohio Supreme Court, stating, "[w]here the meaning of terms of a settlement agreement is disputed, or where there is a dispute that contests the existence of a settlement agreement, a trial court must conduct an evidentiary hearing prior to entering judgment." Id. at 3, quoting Rulli v. Fan Co. (1997), 79 Ohio St.3d 374, 683 N.E.2d 337, syllabus.
 {¶ 32} Unlike Wesbanco, there is absolutely no evidence on the record in this matter establishing or even referencing the terms of the parties' alleged settlement agreement. Based on the trial court's entry, it is impossible to determine whether its apparent enforcement of the parties' agreement was based on sufficient evidence; in fact, we cannot decipher whether the decision is based on any evidence at all.
 {¶ 33} In Rulli, supra, the Supreme Court held that the trial court abused its discretion in enforcing a disputed settlement agreement without conducting an evidentiary hearing. The Rulli Court stressed that, "the law disfavors court enforcement of contracts laden with ambiguity." Id. at 376. Further, "[s]ince a settlement upon which final judgment has been entered eliminates the right to adjudication by trial, judges should make certain the terms of the agreement are clear, and that the parties agree on the meaning of those terms." Id.
 {¶ 34} In the instant case, the trial court's August 18, 2006, Judgment Entry indicates that there was some sort of a hearing held on July 21, 2006, at which the *Page 11 
parties may have reached an agreement on some matters. However, that transcript is not before this Court for review. Ordinarily, an appellant's argument will be denied for its failure to provide the necessary transcript for review. An appellate court must presume the regularity of the trial court's proceedings and affirm its decision absent the transcript necessary for review. Ostrander v. Parker-FallisInsulation (1972), 29 Ohio St.2d 72, 74, 278 N.E.2d 363; FarmersProduction Credit Assn. v. Stoll (1987), 37 Ohio App.3d 76,523 N.E.2d 899.
 {¶ 35} Notwithstanding, it is unclear in this case whether the July 21, 2006, hearing transcript would actually show the terms of the alleged agreement between the parties. The trial court's judgment entry apparently confirming the parties' agreement and denying Appellant a specific hearing on damages is not instructive in this regard. It vaguely indicates that an agreement was reached, yet it fails to advise whether the court was made aware of the terms.
 {¶ 36} Further, Appellant's counsel, as an officer of the court, clearly stated on direct questioning from this Court that the hearing transcript will evidence no such agreement as no agreement was ever reached by the parties. "An attorney is an officer of the court and is always under oath when speaking to matters within his personal knowledge, such as the conduct of proceedings." State v. Ayers, 8th Dist. No. 79134, 2002-Ohio-4773, ¶ 116.
 {¶ 37} Finally, Appellant's arguments and assertions on appeal are unopposed. Since Appellee failed to file a brief on appeal, we may accept Appellant's statement of the facts as accurate. App.R. 18(C). App.R. 18(C), entitled *Page 12 
"[c]onsequence of failure to file briefs," provides in part that a court of appeals may accept an Appellant's unopposed statement of facts as correct and reverse, "if appellant's brief reasonably appears to sustain such action."
 {¶ 38} "To constitute a valid settlement agreement, the terms of the agreement must be reasonably certain and clear[.]" Rulli, supra, at 376. Nonetheless, "[a]ll agreements have some degree of indefiniteness and some degree of uncertainty. * * * In spite of ignorance as to the language they speak and write, with resulting error and misunderstanding, people must be held to the promises they make."Kostelnik v. Helper, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, at ¶ 17, quoting 1 Corbin on Contracts (Perillo Rev. Ed.1993) 530, Section 4.1.
 {¶ 39} Accordingly, we hereby reverse this matter for the trial court to have a hearing and make findings on the record evidencing the terms of the parties' agreement made known to it, if an agreement was reached. As in Rulli, given Appellant's obvious disagreement that the parties ever entered into an agreement to reduce the amount of interest owed and forego the advancements on the property paid by Appellant, the trial court must conduct an evidentiary hearing before enforcing any such alleged agreement. Id. at 377.
 {¶ 40} Assuming that an agreement was reached as the trial court's entry apparently indicates, the trial court needs to establish the terms on the record with sufficient evidence and ensure that it encompassed all the disputed issues. Tabbaa, supra, at ¶ 15. If the trial court now determines that no agreement existed as to any or part of the interest owed and/or that the parties' agreement did not encompass the *Page 13 
advances allegedly made by Appellant pursuant to the note and mortgage, then the trial court must determine those amounts due and payable to Appellant for advances made, if any, pursuant to the contractual agreement or otherwise specify why Appellant is not entitled to the damages sought. In any event, the trial court's final distribution must be supported by its findings and must be sufficiently detailed so that it is capable of review.
 {¶ 41} Based on the foregoing, Appellant's arguments are sustained and we reverse and remand this matter for further proceedings consistent with this Opinion.
Vukovich, J., concurs.
 DeGenaro, P.J., dissents; see dissenting opinion. *Page 14