Eger et al., Appellees, *v.* Eger, Admx., et al., Appellants.

(No. 32618—Decided January 31, 1974.)

*Mr. Leon A. Weiss*, for appellees.
*Mr. Max B. Katz*, for appellant.

KRENZLER, J. Plaintiffs filed a declaratory judgment action in the Probate Division of the Common Pleas Court of Cuyahoga County. The complaint alleges that the plaintiffs Rosella Eger, Mary Jerman, and Jane O'Branavic and defendant Evelyn Gusick are sisters and heirs at law of Matthew Dressler, a resident of Cuyahoga County, who died intestate; that Rosella Eger is also the duly qualified

and acting administratrix of decedent's estate; that Frank and Evelyn Gusick, husband and wife, wrongfully withdrew monies from three savings accounts, which belonged to the decedent, as follows:

(1) St. Clair Savings
    Association                  No. 61516      $ 5,000.00
(2) Second Federal Savings &
    Loan Association             No. 1-399      $10,009.98
(3) Central National Bank       No. 37-21745   $ 5,751.73

The plaintiffs are seeking a determination that the foregoing funds belonged to the decedent at the time of his death and should have been a part of his probate estate.

Defendants filed an answer alleging that the funds withdrawn from the savings accounts belonged to them and that full disclosure of the withdrawal was made to the administratrix.

The case was heard before a referee, who found that the decedent was the sole contributing depositor to the three savings accounts, and that in the years 1965, and 1966 the three accounts were changed to joint and survivorship accounts.

He also found that on March 10, 1969 the decedent was admitted to Euclid Glenville Hospital in very poor health; on March 13, 1969 defendant Frank Gusick withdrew $10,-009.98 from the Second Federal Savings account and placed the proceeds in the name of Frank and Evelyn Gusick, on March 14, 1969 Frank Gusick withdrew $9,997.73[1] from the St. Clair Savings Association, and $5,751.73 from the Central National Bank account; and on March 15, 1969 Matthew Dressler died in the Euclid Glenville Hospital.

The referee's report stated both Frank and Evelyn Gusick admitted that the funds in the above-mentioned savings accounts belonged to Matthew Dressler, and that he intended them to have the funds after his death.

The referee stated that it was the intention of Matthew Dressler to give a vested right of survivorship in the ac-

---

[1]Although the allegation was that the defendants withdrew $5,000, it was proved at trial that there was $9,778.09 in the account.

counts in question to Frank and Evelyn Gusick but to retain for himself control of the accounts and ownership of the funds in question during his lifetime. Matthew Dressler was the true owner of the three savings accounts in question. The referee then concluded that the funds withdrawn from the three savings accounts were assets of the estate of Matthew Dressler.

In a judgment, dated March 1, 1973, a judge of the Probate Court of Cuyahoga County adopted the findings of fact and conclusions of law of the referee and ordered the defendants, Frank and Evelyn Gusick, to pay over to Rosella Eger, as administratrix, the sum of $25,759.44 as wrongfully withdrawn by them from the accounts.

Defendants appellants filed this appeal and have four assignments of error as follows:

1. The complaint for declaratory action is barred by the failure of the plaintiffs to file exceptions to the inventory within the time required by law.

2. The Probate Court in which the action for declaratory judgment was filed did not have jurisdiction to hear the within cause.

3. The joint and survivorship bank accounts created by Matthew Dressler at least 3 years prior to his death were a valid transfer of a present interest to the co-owners. The subsequent withdrawal of the funds by the co-owners a few days prior to the death of Matthew Dressler was a valid withdrawal and the order of the Court below is contrary to law.

4. The trial referee erred in permitting the defendants to testify as to conclusions of law over the objections of counsel.

The first two assignments of error will be considered together because they are concerned with the jurisdiction of the Probate Court to entertain this declaratory judgment action.

Defendants contend that since the administratrix did not include the three bank accounts in the inventory and plaintiffs did not file timely exceptions to the inventory, they are now precluded from bringing this action.

These assignments of error are not well taken.

The effect of defendants' argument is that the sole method by which an administratrix can include assets in an estate is to include them in the inventory.

When a person dies an executor or administrator[2] is appointed by the probate court to represent the estate. His duties include ascertaining assets of the estate; receiving claims of creditors and others; paying debts and completing the administration of the estate within nine months after the date of appointment. (R. C. 2113.25.)

Further, various statutes in the Probate Code prescribe the duties of executors or administrators and set forth time limits for the performance of these duties. (Title XXI, Chapters 2101-2131, R. C.)

An administrator is a representative of an estate and does not have a personal interest in the estate. So far as he is able, he has an obligation and a mandatory duty to seek out and collect every asset belonging to the decedent at the time of his death and include it in the estate. R. C. 2113.25; *McDonough* v. *Zollner* (1938), 27 Ohio Law Abs. 36.

This duty exists during the time the estate is open. An estate is considered open from the date of the issuance of letters testamentary or letters of administration and the appointment of an administrator or executor (R. C. 2113.-01, 2113.05, 2113.06, 2113.15 and 2109.02) until the administrator or executor files a final account and is discharged (R. C. 2109.30 and 2109.32).

A fiduciary of an estate may include assets in the inventory or amended inventory; bring an action in declaratory judgment under R. C. 2721.05, *Radaszewski* v. *Keating* (1943), 141 Ohio St. 489; or use the special proceedings provided for in R. C. 2109.50 to determine whether an asset is concealed or embezzled. *Goodrich, Adm.,* v. *Anderson* (1940), 136 Ohio St. 509. The filing of exceptions to an inventory is not the sole and exclusive method of as-

---

[2] References to executor and administrator will be used interchangeably in the singular or plural, or the feminine or masculine.

certaining whether an asset belongs in the estate of a decedent.

Issues such as the failure of an executor or administrator to include an asset of which he had knowledge in the inventory or failure of a beneficiary or other interested person to file timely exceptions to an inventory are not valid defenses in a declaratory judgment action seeking to include assets in an estate. *Scott* v. *Mofford* (1940), 64 Ohio App. 457.

Further, when an inventory is filed and approved by the Probate Court without exceptions having been taken it is not *res judicata* to a declaratory judgment action seeking to include other assets in the estate that were not in the approved inventory. *Cole* v. *Savings Assn.* (1969), 18 Ohio St. 2d 1.

The Probate Court did have jurisdiction to decide this action and to make a determination as to whether the three savings accounts were assets of decedent's estate. The fact that the administratrix knew of the accounts and did not include them in the estate, and the fact that none of the plaintiffs filed exceptions to the inventory does not preclude the plaintiffs from bringing this action.

We will now consider the third assignment of error.

Normally for property to pass from one person to another upon the death of the other person, the formalities of a will must be complied with under R. C. 2107.03, or property may be transferred under the statute of descent and distribution, R. C. 2105.06. There are several exceptions to these rules regarding transfer of property upon death. They are joint and survivorship accounts and payable on death or P. O. D. accounts, which are two separate and distinct types of bank accounts.

Chapters R. C. 1107 and R. C. 1151 (regarding banks and savings and loan associations) contain R. C. 1107.08 and R. C. 1151.19, which authorize a bank or savings and loan to enter into a written contract with a natural person whereby either person may withdraw funds and the proceeds of the person's deposit may be made payable on

20

his death to another natural person. *In Re Estate of Voegeli* (1959), 108 Ohio App. 371.

The purpose of these statutes is to permit banks and savings and loan associations to enter into joint and survivorship accounts, and if they pay the survivor the money they are discharged from any obligation regardless of the ultimate decision concerning whether the asset belongs in the probate estate or to the survivor. These sections are not part of the Probate Code and do not determine whether there is in fact a true joint and survivorship account.

In recognizing the validity of joint and survivorship accounts, Ohio has applied the so-called contract theory as distinguished from the gift or trust theory. *Rhorbacker* v. *Citizens' Building Association Co.* (1941), 138 Ohio St. 273.

A joint and survivorship account is an *inter vivos* contract creating a present, equal, joint, vested interest in the parties, and can in no way be affected by the laws of descent and distribution, and it is not necessary that there be delivery, actual or constructive. Upon the death of one of the parties, the survivor becomes the absolute owner of the bank account by the operative provisions of the contract. *Sage* v. *Flueck* (1937), 132 Ohio St. 377; *Oleff* v. *Hodapp* (1935), 129 Ohio St. 432; *Cleveland Trust Co.* v. *Scobie* (1926), 114 Ohio St. 241; *In Re Voegeli, supra.*

In order to have a valid joint and survivorship account, there must be a vested present interest in those named in the account. The absolute owner must have intended to create, and did create, by contract such rights in another person that the prior absolute owners rights may be completely divested by such other person. See *In Re Estate of Evans* (1962), 173 Ohio St. 137.

The fact that a bank account is carried in the names of two persons jointly with the right of survivorship is not always conclusive as to the ownership of the account, and where a controversy arises as to the ownership of such account, evidence is admissible in a proper case to show the true situation. The realities of ownership must be shown and substance prevails over form. Where the realities of ownership are not in accord with the form of the contract,

the asset does not go to the survivor. See *Fecteau* v. *Cleveland Trust Co.* (1960), 171 Ohio St. 121; *Union Properties* v. *Cleveland Trust Co.* (1949), 152 Ohio St. 430.

This is an exception to the parol evidence rule, in that it permits oral testimony to explain or modify the terms of an unambiguous written agreement. *Union Properties Inc.* v. *The Cleveland Trust Co., supra,* at 435.

The existence of a joint and survivorship account raises only a rebuttable presumption that the co-owners of the account share equally in the funds on deposit, and the person seeking to uphold the validity of the joint and survivorship account has the burden of proof. *Steinhauser* v. *Repko* (1972), 30 Ohio St. 2d 262; *In re Duiguid* (1970), 24 Ohio St. 2d 137; *In re Estate of Svab* (1967), 11 Ohio St. 2d 182.

It is recognized that persons often, without considering legal consequences, create or open joint and survivorship accounts when they have a twofold purpose: (1) convenience, such as withdrawal of funds, and (2) the intention to have the other person take the proceeds as a survivor. Such persons do not intend to create a present, equal, joint vested interest in the account. Under these facts a true joint and survivorship account *is not created. In re Duiguid, supra,* at 140. However, if there is no attack on the validity of the account the survivor will take the proceeds. If an attack is made on the realities of ownership, the attacking party is in effect attempting to show that no present interest was created or that no right of survivorship was intended. *Steinhauser* v. *Repko, supra,* at 269.

In the absence of any evidence other than the signature cards the presumption is sufficient as a matter of law to uphold a joint and survivorship contract. *Steinhauser* v. *Repko, supra,* at 269. But, when there is reliable, relevant and credible evidence that the decedent did not intend to create a present, vested interest, in the survivor, the bank signature cards by themselves do not constitute enough evidence of an intention on the part of the decedent to create a true joint and survivorship account, and under such circumstances the survivor has not met his burden of proof.

*In re Estate of Svab, supra.* Presumption of validity of a joint and survivorship account thus may be overcome if written documents, oral pronouncements, or actions of the decedent prior to his death negate his intention to create a present, vested right in the other person. If it is determined by the Probate Court that a true joint and survivorship account was not created, the funds will go into decedent's probate estate.

It is also noted that the survivorship provision of a joint and survivorship account cannot stand alone. See *In re Voegeli, supra; In re Estate of Ellen Morgan* (1918), 28 O. C. A. 222. The form of the contract is for a joint and survivorship account, not a joint and/or survivorship account. If, in fact, a joint and survivorship account was not created the proceeds cannot be transferred to the survivor because the asset was that of the decedent on his death and belongs in his probate estate.

Attention is invited to the fact that there is another type of bank account by which the funds can be transferred to a survivor without becoming an asset of the probate estate and without complying with the formalities of the statute of wills. This is the so-called payable on death or P. O. D. account, provided for in R. C. 2131.10.

This section provides that a natural person may enter into a written contract with any bank, or savings and loan association, whereby the proceeds of the owner's account may be made payable on the death of the owner to another person, referred to as the beneficiary, notwithstanding any provisions to the contrary in R. C. Chapter 2107, the Statute of Wills. These accounts are identified as payable on death, or P. O. D.

This section also allows only the owner, during his lifetime, to withdraw the proceeds or change the beneficiary. The beneficiary cannot withdraw funds during the life of the owner and the interest of the beneficiary does not vest until the death of the owner. *In re Estate of Tonsic* (1968), 13 Ohio App. 2d 195.

There is a substantial distinction between a joint and survivorship account and a P. O. D. account. In a joint and

survivorship account there is created by contract a present interest in the account, whereby either person may withdraw the funds at any time, and upon the death of the other person the survivor will take all the proceeds in the account without such proceeds becoming part of the probate estate. In a P. O. D. account a beneficiary may not withdraw funds and does not obtain any right in the account until the death of the grantor. In the present case we are not dealing with a P. O. D. account, but with a joint and survivorship account.

If the decedent wanted to create a present, vested interest with a right of survivorship, a joint and survivorship account was the proper vehicle. However, if the decedent wanted defendants' names added for convenience, such as withdrawal of funds and also wanted the defendants to take the proceeds of the accounts on his death, he could have given the defendants powers of attorney for the three accounts and also made them P. O. D. accounts. If the decedent only wanted the defendants to take the proceeds of the bank accounts on his death, he could have made them P. O. D. accounts, or made the defendants beneficiaries of his will.

The defendants contend that valid joint and survivorship accounts were created and that the money belongs to them. Plaintiffs contend that these were not valid joint and survivorship accounts and that the defendants' names were only added for convenience and that it was not the intention of the decedent to make an intervivos transfer to the defendants, and that the funds belong to the estate.

The referee found and the trial court affirmed the fact that joint and survivorship accounts were not created. It was held that all of the funds deposited in the three savings accounts belonged to Matthew Dressler and it was his intention to only give a right of survivorship in the accounts to the defendants, and that he retained control for himself during his lifetime.

After carefully reading the transcript of testimony in this case, we cannot say that the trial court committed prejudicial error in finding that a joint and survivorship ac-

count was not created. The record supports the referee's finding and the trial court's judgment that the decedent did not intend to create a present vested interest in the defendants in the three bank accounts. A reviewing court will reverse a judgment based on such finding only when there is an absence of relevant evidence which would warrant such a finding. See *In Re Duiguid, supra.*

The law correctly applied to this case requires a seemingly harsh result in that it denies the defendants the funds from the accounts which listed them as joint owners with the right of survivorship. The decedent is primarily responsible because his actions were not consistent with his intentions. A person opening a special purpose account, such as a joint and survivorship account, has the responsibility to make sure that the type of account created, and the legal consequences following therefrom, are consistent with his or her true intentions and reasons for creating the account. Otherwise, on his death the consequences to the survivor may be other than what the decedent intended.

The third assignment of error is not well taken.

The fourth assignment of error is also not well taken. The referee permitted the defendants to testify on cross-examination as to the intention of the decedent in creating the joint and survivorship accounts. This was relevant and proper evidence.

*Judgment affirmed.*

MANOS, C. J., and JACKSON, J., concur.