## In re ESTATE OF KELSEY.

[Cite as *In re Estate of Kelsey*, 165 Ohio App.3d 680, 2006-Ohio-1171.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 2004–L–099.

Decided March 10, 2006.

---

5. Urban concedes that the Whistleblower Statute does not apply to the instant case.

682

Cooper & Forbes and Glenn E. Forbes, for appellant, Darryl M. Kelsey.

Redmond & Walker and Gerald R. Walker; Ziegler, Metzger & Miller, L.L.P., and Richard T. Spotz, for appellee, Marguerite J. Barton.

DIANE V. GRENDELL, Judge.

{¶ 1} Appellant, Darryl M. Kelsey, appeals the judgment of the Lake County Court of Common Pleas, Probate Division, ordering the sale at auction of a family Bible as part of the administration of the estate of decedent, Dorothy F. Kelsey. For the following reasons, we affirm the decision of the probate court.

{¶ 2} Dorothy F. Kelsey, of Concord Township, died testate at Lake East Hospital on January 30, 2000. According to the decedent's last will and testament, her son, Darryl M. Kelsey, was nominated executor of the estate. Pursuant to the provisions of the will, "all of [decedent's] property whether real, personal or mixed," was left to her children, Darryl M. Kelsey and appellee,

Marguerite J. Barton, "in fee simple absolute in equal shares, to share and share alike."

{¶ 3} On February 6, 2001, Kelsey filed an application to probate the will and an application for authority to administer the estate. On February 9, 2001, Barton filed a request for hearing on Kelsey's application to administer the estate. Barton challenged Kelsey's suitability to serve as executor of the estate, citing the fact that Kelsey waited over a year before proceeding with the probate of decedent's estate, that Kelsey failed to file a timely estate tax return for the estate, that Kelsey transferred real estate belonging to the decedent to his daughter shortly before decedent's death, and that "there exists hostility and distrust" between Kelsey and Barton.

{¶ 4} On June 19, 2001, Kelsey and Barton were appointed co-executors of decedent's estate.

{¶ 5} On January 4, 2002, the probate court issued writs of citation for failure to file an inventory and ordered Kelsey and Barton to file estate inventories by January 17, 2002. On January 23, 2002, Barton filed an estate inventory. Barton inventoried decedent's tangible personal property as follows: "Household goods & furnishings, jewelry, antiques" valued at $3,987. Kelsey did not sign Barton's inventory and did not file his own inventory.

{¶ 6} On January 9, 2002, Barton filed several motions with the court, including a motion to have Kelsey removed as a co-executor. Attached to Barton's motions was an affidavit that stated that decedent's personal property was appraised on September 10, 2001, and that she had been denied access to decedent's personal property.

{¶ 7} On February 12, 2002, Kelsey filed objections to Barton's inventory on the grounds that certain items of property were not valued or were undervalued.

{¶ 8} In April 2002, a hearing was held on the parties' various motions and objections at which the parties agreed to withdraw as co-executors. On May 8, 2002, the probate court entered judgment removing Kelsey and Barton as co-executors and appointing Richard T. Spotz, Jr. successor administrator with the will annexed.

{¶ 9} In November 2002, a hearing was held on matters pending before the court, including Kelsey's objections to Barton's inventory. At this hearing, the parties entered into a settlement agreement. This agreement provided: "Each party shall submit their list of desired personal property to the other party not later than December 5, 2002, and each party shall retain as their sole property all items in their sole possession that are not desired by the other party. The administrator shall sell any property desired by both parties. * * * Each party also hereby fully and finally releases the other party hereto from any and all

claims that said party has, might have, or claims to have, regarding this estate, and any advances claimed to be made on behalf of this estate, services claimed to be rendered to the decedent or to this estate, or in any way relating to this estate or to the decedent, Dorothy Kelsey." The trial court adopted the parties' agreement in a judgment entry dated November 15, 2002.

{¶ 10} On November 20, 2002, a judgment entry was filed approving the inventory and appraisement of the estate of Dorothy F. Kelsey.[1]

{¶ 11} On October 28, 2003, Spotz filed a final and distributive account for the estate.

{¶ 12} On December 4, 2003, Barton filed objections to the final account, in which she alleged that Kelsey had improperly given the family Bible to his daughter pursuant to a power of attorney during the decedent's lifetime. A hearing on Barton's objections was held in February 2004. On March 23, 2004, the probate court entered judgment ordering Spotz to sell the family Bible and distribute the proceeds in accordance with the will.

{¶ 13} On May 24, 2004, the trial court issued findings of fact and conclusions of law on a motion filed by Kelsey. The probate court found that Kelsey had given the family Bible to his daughter during decedent's lifetime pursuant to a power of attorney. Therefore, "[t]he family Bible was not an asset of decedent's estate at the time of her death, and was not listed on the estate inventory." The probate court found, however, that Kelsey's power of attorney "did not contain any grant of authority to make gifts" and, therefore, "the transfer is presumptively invalid." The probate court concluded that Kelsey had failed to rebut the presumption and that the Bible was properly a part of the decedent's estate. From this judgment, Kelsey timely brings appeal.

{¶ 14} Kelsey raises the following assignments of error on appeal:

{¶ 15} "[1.] The Lake County Probate Court erred in failing to apply res judicata to the exclusion of the family Bible from the inventory of the Estate of Dorothy J. Kelsey.

{¶ 16} "[2.] The Lake County Probate Court erred in concluding the gift of the family Bible failed.

{¶ 17} "[3.] The Lake County Probate Court erred in concluding that the release included in the settlement agreement relating to the objection to inventory did not bar the claim made for the family Bible at the final account.

---

1. The November 20, 2002 judgment entry does not specifically identify the inventory and appraisement being approved. Barton's inventory was the only inventory ever filed in this case, and her inventory did not include an appraisal.

{¶ 18} "[4.] The Probate Court was without jurisdiction to make the determination it made with respect to the family Bible."

{¶ 19} Under the first assignment of error, Kelsey argues that res judicata applies to prevent Barton from challenging the exclusion of the family Bible from the estate inventory. Kelsey maintains that Barton has waived her right to challenge the estate's accounting as to the family Bible by not raising the issue at the time the probate court approved the inventory. We disagree.

{¶ 20} "When an inventory is filed and approved by the probate court without exceptions having been taken it is not res judicata to a [subsequent] action seeking to include other assets in the estate that were not in the approved inventory." *Eger v. Eger* (1974), 39 Ohio App.2d 14, 68 O.O.2d 150, 314 N.E.2d 394, paragraph three of the syllabus. Accord *In re Ross* (1989), 65 Ohio App.3d 395, 398–399, 583 N.E.2d 1379; cf. *In re Rudy* (Dec. 3, 1993), 11th Dist. No. 93–T–4850, 1993 WL 545111, at *2 ("the inclusion of the personalty in the inventory filed by appellees is not *res judicata,* and does not prejudice the claims of appellants as to ownership"). Moreover, "the failure of an executor * * * to include an asset of which he had knowledge in the inventory or failure of a beneficiary or other interested person to file timely exceptions to an inventory are not valid defenses in a [subsequent] action seeking to include assets in an estate." *Eger,* 39 Ohio App.2d at 19, 68 O.O.2d 150, 314 N.E.2d 394; *Ross,* 65 Ohio App.3d at 398–399, 583 N.E.2d 1379 (failure of beneficiaries to file exceptions to inventory did not bar them from litigating in a declaratory judgment action issues that could have been excepted).

{¶ 21} In the present case, Kelsey had delivered possession of the family Bible to his daughter prior to the death of the decedent and the creation of the estate. Thus, the Bible was not in the decedent's possession at the time of her death and, according to Kelsey, the Bible was not the "personal property of the decedent" such as should be included in an inventory. See R.C. 2115.02. Since title to the family Bible was disputed, Barton should not be penalized for failing to raise the issue at the time the estate was inventoried.

{¶ 22} Kelsey argues Barton could have raised the issue when the probate court considered his objections to her inventory, since she knew of the Bible's existence at this time. There is no support for this position under Ohio law. The only instances in which res judicata has been applied in this situation are where the probate court has actually litigated a claim regarding a particular asset. See, e.g., *Bolles v. Toledo Trust Co.* (1940), 136 Ohio St. 517, 17 O.O. 156, 27 N.E.2d 145, at syllabus ("[a] final adjudication, that certain inventoried personal property is assets of a decedent's estate and lawfully included in the inventory thereof * * * by filing exceptions to the inventory, is *res judicata* when properly pleaded

as a defense in a subsequent action"); cf. *In re Lewis* (July 23, 1999), 4th Dist. No. 98CA17, 1999 WL 595458, at \*2 (holding that res judicata did not apply to bar subsequent litigation where appellants filed, but subsequently dismissed, exceptions to estate inventory); *Ross*, 65 Ohio App.3d at 398–399, 583 N.E.2d 1379; *Eger*, 39 Ohio App.2d at 19, 68 O.O.2d 150, 314 N.E.2d 394. In the present case, the issue of whether the family Bible was properly an asset of the estate had never been raised, litigated, or determined prior to Barton's objections.

{¶ 23} Finally, since the trial court determined that Kelsey's gifting of the family Bible to his daughter was invalid, the Bible had the status of a concealed asset of the estate. In the case of concealed assets, there is no time limit for the filing of exceptions to the exclusion of that asset from the estate. R.C. 2115.16. Accordingly, there was nothing untimely about Barton's challenge to the inventory, albeit raised as an objection to the final accounting.

{¶ 24} Kelsey's first assignment of error is without merit.

■ {¶ 25} Under the second assignment of error, Kelsey argues that the probate court erred in invalidating the transfer of the family Bible to his daughter. Kelsey's first argument is that the presumption of undue influence in transactions involving fiduciaries does not apply in this case because Kelsey's daughter, the donee of the Bible, was not in a fiduciary relationship with the decedent. According to Kelsey, the "family gift presumption" applies, which holds that transfers of property between family members are presumed to be gifts. See *Creed v. Lancaster Bank* (1852), 1 Ohio St. 1, at paragraph three of the syllabus.

{¶ 26} Kelsey misrepresents the factual situation. The trial court did not find that the decedent herself had gifted the Bible to her granddaughter, but that Kelsey had made the gift. The focus, therefore, was on Kelsey's authority to make that gift. During the proceedings on Barton's objections, Kelsey made the following stipulation: "Prior to decedent's death, Darryl Kelsey gave the family Bible to his daughter, Katherine Kelsey, under the Power of Attorney." The trial court properly concluded that Kelsey's power of attorney did not grant Kelsey authority to make gifts on the decedent's behalf. See *In re Meloni*, 11th Dist. No. 2003-T-0096, 2004-Ohio-7224, 2004 WL 3090190, at ¶ 34 (a fiduciary, as agent of the principal, "may not make gratuitous transfers of the principal's assets unless the power of attorney from which the authority is derived expressly and unambiguously grants the authority to do so"). Therefore, decedent's relationship with Kelsey's daughter is not determinative.

■ {¶ 27} Kelsey also argues that, even if a presumption of undue influence exists by virtue of his position as the decedent's fiduciary, that presumption does not defeat the family-gift presumption that existed between him and the dece-

dent. We disagree. The law is well settled in this district "that in cases where * * * family members are also in a fiduciary relationship, the family gift presumption yields to the more specific presumption of undue influence, which arises in fiduciary relationships." *In re Anderson* (Dec. 15, 2000), 11th Dist. No. 99–T–0160, 2000 Ohio App LEXIS 5928, at *4–*5, citing *In re Guardianship of Blumetti* (Jan. 14, 1994), 11th Dist. No. 92–T–4752, 1994 WL 45250, at *2.

{¶ 28} Kelsey's second assignment of error is without merit.

■ {¶ 29} Under the third assignment of error, Kelsey argues that Barton is barred from challenging the exclusion of the Bible by the language in the settlement agreement providing that "[e]ach party * * * fully and finally releases the other party * * * from any and all claims * * * regarding this estate." Barton argues that this language does not apply to her because she is "not asserting a claim to the Bible" but, rather, seeks "to determine title to the Bible." We reject Barton's argument. Barton would not have standing to raise the issue of title to the Bible unless she was able to claim an interest in the Bible as a beneficiary of the estate.

{¶ 30} The release provision of the settlement agreement, however, conflicts with another provision of the agreement providing that both parties may make claims to particular items of personal property and that the administrator should sell property that is claimed by both parties. It is also significant that, under the peculiar procedural history of this case, when the parties entered their agreement, there was no approved inventory of the estate, and no itemized appraisal of decedent's personal property had been filed with the probate court. The agreement does not purport to define the personal property that belongs to the estate. In light of these considerations, the release language should not be construed to bar Barton from asserting her interest in the personal property of the estate, although title to that particular property was disputed.

{¶ 31} Kelsey's third assignment of error is without merit.

■ {¶ 32} Under the fourth and final assignment of error, Kelsey claims that the probate court lacked jurisdiction to determine title to the Bible. Kelsey relies on this court's decision in *Burns v. Daily* (1996), 114 Ohio App.3d 693, 683 N.E.2d 1164, which states that, where "title does not reside in the decedent upon her death, but passed to a third party by *inter vivos* transaction or gift, then such property may not be included as an estate asset, and may not be retrieved by a summary proceeding in the probate court." Id. at 702–703, 683 N.E.2d 1164. We disagree.

{¶ 33} The probate court's conclusion that the Bible was not an asset of the estate for the purpose of inventorying the estate does not mean that title did not reside in the decedent upon her death. The probate court's conclusion was based

on the fact that the Bible was not in the decedent's possession and that there had been an attempted transfer of title. Where, as here, a dispute exists regarding title, the probate court is not deprived of jurisdiction to resolve the dispute under *Burns*. See *Rudloff v. Efstathiadis*, 11th Dist. No. 2002–T–0119, 2003-Ohio-6686, 2003 WL 22931382, at ¶ 9 ("[b]ecause the gifts * * * are invalid, ownership never passed from the decedent and these assets are properly part of the estate, albeit wrongfully withheld").

{¶ 34} Kelsey is also incorrect that Barton's sole remedy in this situation is to file a concealment/embezzlement action under R.C. 2109.50 or an action for declaratory judgment under R.C. 2721.05. It is well settled that the probate court can determine title to personal property on exceptions to an inventory and that it is a matter of discretion whether the exceptor should be ordered to pursue other remedies. *In re Gottwald* (1956), 164 Ohio St. 405, 58 O.O. 235, 131 N.E.2d 586, at paragraph two of the syllabus. This court has also held that the probate court has concurrent jurisdiction, under R.C. 2101.24(B)(1)(b), to determine title to disputed assets in addition to the jurisdiction granted under R.C. 2109.50 in concealment/embezzlement actions. *Burwell v. Rains*, 11th Dist. No. 2004–T–0042, 2005-Ohio-1893, 2005 WL 940580, at ¶ 29, citing R.C. 2101.24(B)(1)(b) ("[t]he probate court has * * * the same powers at law and equity as, the general division of the court of common pleas * * * to hear and determine * * * [a]ny action that involves * * * a power of attorney").

{¶ 35} Kelsey's fourth assignment of error is without merit.

{¶ 36} For the foregoing reasons, Kelsey's assignments of error are without merit. The judgment of the Lake County Court of Common Pleas, Probate Division, ordering the sale at auction of the family Bible as part of the administration of the estate of Dorothy F. Kelsey, is affirmed.

Judgment accordingly.

RICE, J., concurs.

O'NEILL, J., dissents with a dissenting opinion.

WILLIAM M. O'NEILL, Judge, dissenting.

{¶ 37} I dissent in order to uphold the principles that govern administration of probate estates.

{¶ 38} There are at least three overarching principles that govern the administration of probate estates. The first is that the general powers of the probate court are limited by statute. As stated by the Tenth Appellate District:

{¶ 39} "Probate Courts are not courts of general jurisdiction * * * no authority is needed in support of the statement. Their jurisdiction is such and only such

as is conferred upon them by constitution or statute, with such auxiliary and incidental powers as are necessary and proper to carry into effect those expressly granted."[2]

{¶ 40} The second principle is that the state of Ohio seeks to " 'facilitate the orderly administration of estates.' "[3]

{¶ 41} The third and final principle is that the law favors speedy settlement of estates.[4]

{¶ 42} I believe that the course of the litigation in the probate court violated all three of these principles.

{¶ 43} The significant dates and events in the administration of Ms. Kelsey's estate are as follows:

| {¶ 44} | January 30, 2000 | Death of the decedent. |
|---|---|---|
| {¶ 45} | February 6, 2001 | Application to probate will and application for authority to administer estate filed. |
| {¶ 46} | June 19, 2001 | Appointment of Kelsey and Barton as co-executors. |
| {¶ 47} | September 10, 2001 | Appraisal of decedent's personal property. |
| {¶ 48} | January 23, 2002 | Barton files estate inventory. |
| {¶ 49} | February 12, 2002 | Kelsey files objections to inventory. |
| {¶ 50} | May 8, 2002 | Spotz appointed administrator with the will annexed. |
| {¶ 51} | November 20, 2002 | Judgment entry approving inventory. |
| {¶ 52} | June 5, 2003 | Spotz files partial account. |
| {¶ 53} | October 28, 2003 | Spotz files final account. |
| {¶ 54} | December 4, 2003 | Barton files exceptions to final account. |

{¶ 55} Therefore, Barton filed exceptions to Spotz's final account 23 months after she filed the estate inventory.

{¶ 56} Notably, Barton was herself a fiduciary of the estate for the period from June 19, 2001, up to and including May 8, 2002. While a fiduciary, she filed an estate inventory, which omitted the family Bible that is in dispute. This omission was in derogation of the statute that required her to list all the assets of which she had knowledge or which were in her possession on the estate inventory. R.C. 2115.02 charges the executor with the duty to file an inventory of the decedent's probate assets as of the decedent's date of death:

{¶ 57} "Within three months after the date of the executor's or administrator's appointment * * * the executor or administrator shall file with the court an

---

2. *Abicht v. O'Donnell* (1936), 52 Ohio App. 513, 515–516, 6 O.O. 462, 3 N.E.2d 993.

3. *Howard v. Reynolds* (1972), 30 Ohio St.2d 214, 217, 59 O.O.2d 228, 283 N.E.2d 629, fn. 2, quoting the dissenting opinion of Potter, P.J., from the appellate court decision. See, also, *White v. Randolph* (1979), 59 Ohio St.2d 6, 13, 13 O.O.3d 3, 391 N.E.2d 333; Sup.R. 78(A).

4. *Myers v. Myers* (1907), 9 Ohio C.C.(N.S.) 449, 1907 WL 536, paragraph three of the syllabus. See, also, Sup.R. 78(B), (C), and (D).

inventory of the decedent's interest in real estate located in this state and of the tangible and intangible personal property of the decedent that is to be administered and that has come to the executor's or administrator's possession or knowledge. The inventory shall set forth values as of the date of death of the decedent."

{¶ 58} The inventory includes the appraisement.[5] There is no separate approval process for an appraisal, as asserted by the majority.

{¶ 59} The duty of a fiduciary to seek out and collect all probate assets in order to prepare the estate inventory was well stated in *Ewing*: [6]

{¶ 60} "An [executor] of an estate functions in a fiduciary capacity and, pursuant to R.C. 2113.25 * * * has a duty to collect all of the assets of the estate. * * * The representative of an estate has an obligation and mandatory duty to seek out and collect every asset belonging to the decedent at the time of his death and include it in the estate. * * * The duty exists from the time the estate is opened, which occurs upon issuance of letters testamentary or letters of administration, and continues until the administrator or executor files a final account and is discharged." [7]

{¶ 61} Barton filed an inventory for the estate on January 23, 2002. She signed the inventory. Under the heading "tangible personal property," Barton listed the following: "[h]ousehold goods and furnishings, jewelry, antiques" and stated the value thereof to be $3,987. No further description of the tangible personal property was given in the inventory, though the record reflects that in September 2001, the parties had commissioned an independent appraiser to ascertain the value of tangible personal property then in the possession of Kelsey and Barton.

{¶ 62} On May 30, 2002, Barton wrote a letter to her attorney drawing to his attention the fact that various items of tangible personal property were not listed in the appraiser's report with respect to the property in Kelsey's possession. Among those items, Barton listed the family Bible.

{¶ 63} Barton failed to include the family Bible in the estate inventory when she was the fiduciary and then took exception to its omission at the 11th hour in the estate administration. She commissioned a private appraisal of the decedent's personal property during September 2001. After the appraisal, she knew that the family Bible had not been included in the appraisal. Yet for reasons

5. R.C. 2115.01.

6. *In re Estate of Ewing*, 3d Dist. No. 5-03-03, 2003-Ohio-4734, 2003 WL 22071471.

7. Id. at ¶ 12.

known only to Barton, she inserted a summary description of the tangible personal property on the estate inventory filed in January 2002 and chose not to list the specific items of tangible personal property that she was aware of from the commissioned appraisal. The estate inventory filed by Barton, without the inclusion of the family Bible, was approved by the court.

{¶ 64} Barton's acts of omission with respect to her knowledge of the family Bible continued after the filing of the estate inventory.

{¶ 65} Subsequent to the filing of the estate inventory, Barton entered into a settlement agreement in November 2002, also without any reference to the family Bible. The probate court approved this settlement agreement "in its entirety" and incorporated many of its provisions into its own judgment entry. Contrary to this judgment entry, Barton failed to comply with the court-ordered requirement to provide a list of tangible personal property that she had requested by December 5, 2002.

{¶ 66} When Spotz, the new administrator appointed by the probate court, filed his first partial account, Barton filed no exceptions to the account. However, after he filed his final account on October 28, 2003, Barton excepted on the ground that Kelsey had refused to turn over one-half of the family photographs to her and that the family Bible had not been included as an asset of the estate. This occurred 35 months after her mother's death.

{¶ 67} Exceptions to a fiduciary's account are permitted by R.C. 2109.33:

{¶ 68} "Any person interested in an estate or trust may file exceptions to an account or to matters pertaining to the execution of the trust. All exceptions shall be specific and written."

{¶ 69} The account itself shall include:

{¶ 70} "[A]n itemized statement of all receipts of the administrator or executor during the accounting period and of all disbursements and distributions made by the executor or administrator during the accounting period. In addition, the account shall include an itemized statement of all funds, assets, and investments of the estate known to or in the possession of the administrator or executor at the end of the accounting period and shall show any changes in investments since the last previous account." [8]

{¶ 71} All interested parties are to receive notice of the hearing on the account:

---

8. R.C. 2109.301(A).

{¶ 72} "The notice shall set forth the time and place of the hearing and shall specify the account to be considered and acted upon by the court at the hearing and the period of time covered by the account." [9]

{¶ 73} At the hearing on the account, "the court shall inquire into, consider, and determine all matters relative to the account and the manner in which the fiduciary has executed the fiduciary's trust * * * and may order the account approved and settled or make any other order as the court considers proper." [10]

{¶ 74} Exceptions to an account "go only to what the executor has done in his administration as set forth in his account and not to what he has failed to do[.]" [11]

{¶ 75} "[E]xceptions test the correctness of all items in the account with which the executor charges and credits himself, whether the account shows that the executor charges himself with all funds of the estate coming into his hands, whether the account shows all payments made by him during the period of the account, and whether such payments were authorized and legal; whether the executor failed to pay certain debts which should have been paid is not a matter raised by such exceptions." [12]

{¶ 76} Thus, Barton's exceptions to Spotz's final account should have tested only those entries made by Spotz in his account, limited to the time period for which Spotz was reporting. Exceptions are not intended as a device to test anything and everything that may have happened in the administration of the estate. When Spotz filed his first partial account and it was approved, the order approving that account had the effect of a judgment.[13] Such judgment had finality, as is consistent with trying to achieve orderly administration of estates. Barton attempted at the 11th hour to inject new matter into the probate proceedings by filing exceptions to Spotz's final account.

{¶ 77} "If an executor, administrator, or other interested party discovers that an asset was not included in the inventory or supplemental inventory of a decedent, and that the asset may belong to the estate, such party may bring an action in declaratory judgment under R.C. 2721.05, or use the special proceedings

---

9. R.C. 2109.33.

10. R.C. 2109.32(A).

11. *In re Rothstein* (1958), 108 Ohio App. 487, 9 O.O.2d 469, 162 N.E.2d 547, paragraph two of the syllabus.

12. Id., paragraph four of the syllabus.

13. R.C. 2109.35.

of R.C. 2109.50 to determine whether such asset belongs in the estate of the decedent." [14]

{¶ 78} During the 34 months this estate was open, she neither pursued a declaratory judgment action nor a concealment-of-assets action. Instead, she waited until the 11th hour to assert her claim that the family Bible should be included as an asset of the estate. This was improper and should not have been allowed by the probate court.

{¶ 79} Moreover, Barton should be estopped by her conduct to assert that the family Bible should be included as part of the estate.

{¶ 80} In his first assignment of error, Kelsey argues that the doctrine of res judicata bars the court from accepting the family Bible as part of the estate inventory.

{¶ 81} The Supreme Court of Ohio has explained the relationship between res judicata and collateral estoppel:

{¶ 82} "As it has come to be recognized in its modern form, *res judicata* also takes in the doctrine of collateral estoppel, which provides that 'if an issue of fact or law actually is litigated and determined by a valid and final judgment, such determination being essential to that judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.' " [15]

{¶ 83} With regard to probate administration, the rule regarding res judicata has been summarized in the case of *In re Estate of Cecere* :

{¶ 84} "The leading case this Court has found which holds that a judgment with respect to an inventory is *res adjudicata* as to the title of assets therein contained is *Bolles v. Toledo Trust Company* [1940], 136 Ohio St. 517 [17 O.O. 156, 27 N.E.2d 145], wherein the Supreme Court states: 'When in an action an issue is determined and judgment rendered all parties are bound and thereafter estopped from asserting rights in conflict therewith in subsequent litigation in the same or another judicial tribunal.' " [16]

---

**14.** *Eger v. Eger* (1974), 39 Ohio App.2d 14, 68 O.O.2d 150, 314 N.E.2d 394, paragraph two of the syllabus.

**15.** *Gilbraith v. Hixson* (1987), 32 Ohio St.3d 127, 128, 512 N.E.2d 956, fn. 1, quoting *Hicks v. De La Cruz* (1977), 52 Ohio St.2d 71, 74, 6 O.O.3d 274, 369 N.E.2d 776. See, also, *Holzemer v. Urbanski* (1999), 86 Ohio St.3d 129, 133, 712 N.E.2d 713.

**16.** *In re Estate of Cecere* (1968), 17 Ohio Misc. 101, 102, 46 O.O.2d 134, 242 N.E.2d 701.

{¶ 85} In light of these principles regarding res judicata and collateral estoppel, I believe that Barton should not be able to relitigate issues that were or might have been litigated previously in the same matter.