OPINION
{¶ 1} Appellant, Richard A. Boccia, appeals the judgment of the Trumbull County Court of Common Pleas, Probate Division, granting in part, and denying in part, his Exceptions to Inventory filed with respect to the Estate of Louis T. Boccia. For the following reasons, we affirm the judgment of the court below.
 {¶ 2} Louis Boccia was the owner of L. T. Boccia Construction Company, founded in 1956, and resided in Niles, Ohio. Louis' son, Richard, was an employee of the company *Page 2 
until 1998. The following year, Richard established his own construction/demolition company in competition with L. T. Boccia Construction.
 {¶ 3} In May 1999, Louis filed suit against Richard, alleging that he had used the company's equipment without authorization for his own benefit.
 {¶ 4} In February 2000, Richard filed a "shareholders' derivative action" against Louis, alleging breach of fiduciary duty, breach of contract, and conversion, and requesting the appointment of a receiver, an accounting, injunctive relief, and the judicial dissolution of L. T. Boccia Construction. See Boccia v. Boccia, 11th Dist. No. 2005-T-0025,2006-Ohio-2384, at ¶ 2. The basis of Richard's claim that he is a shareholder of the company is twenty shares of common stock which he allegedly inherited upon his mother's death in 1977.
 {¶ 5} Louis died testate on April 9, 2006. Pursuant to Louis' Last Will and Testament, Patricia L. Rickard and Virginia L. Boccia, nka Apergis, were nominated co-executrices of the estate.
 {¶ 6} On July 17, 2006, an Inventory and Appraisal was filed pursuant to R.C. 2115.02. Richard filed Objections to Inventory on August 3, 2006. Richard disputed the estate's ownership of various assets, including construction/demolition equipment located on property he owns at 1700 and 1710 North State Street (U.S. 422), in Girard.
 {¶ 7} On September 18, 2006, the probate court ordered that "the Co-Executrices and their appraiser * * * be granted access to the building and lands of Richard A. Boccia known as [1700-1710] N. State Street * * * for the express purpose of inspection and appraising the equipment located on these premises which the Estate claims is an asset of this Estate." *Page 3 
 {¶ 8} On January 5, 2007, the disputed equipment on Richard's property was appraised by auctioneer/appraiser David Dangerfield. Dangerfield's report identified and appraised 53 pieces of equipment and/or scrap on the North State Street property.
 {¶ 9} On January 19, 2007, the co-executrices filed a First Amended Inventory and Appraisal. Richard filed Exceptions to the First Amended Inventory on February 6, 2007.
 {¶ 10} A hearing on the First Amended Inventory commenced on March 6, and continued on March 15, 2007. On March 28, 2007, the probate court entered a Judgment Entry recognizing that the parties had stipulated to the ownership of various disputed assets, but that several of the Exceptions to the First Amended Inventory remained in dispute. A final day of hearings was held on April 4, 2007.
 {¶ 11} On May 9, 2007, the probate court entered a Judgment Entry variously sustaining, and rejecting Richard's Exceptions to the Inventory. The court made the further findings that much of the "equipment, scrap materials and other property" located on Richard's property was purchased by L. T. Boccia Construction during the course of his employment with the company and stored on the property. The court found that no lease agreement for the storage of the property existed and that no storage fees were paid or demanded. Finally, the court held that Richard had failed to sustain the burden of proof that Louis/L. T. Boccia Construction had abandoned this property or had gifted it to him.
 {¶ 12} Richard timely appeals and raises the following assignments of error.
 {¶ 13} "[1.] The trial court erred by approving the inventory, which included certain stock in L. T. Construction Company, and finding that Louis T. Boccia was the owner of L. T. Boccia Construction, Inc. as said stock is the subject of another, previously filed lawsuit, and therefore barred from consideration by the doctrine of res judicata." *Page 4 
 {¶ 14} "[2.] The trial court erred by placing the burden of proof upon appellant to prove that the personal property on his real estate, that was listed on the first amended inventory and subject to appellant's exceptions to such, was his personal property and not that of the estate, in violation of appellant's right to procedural due process as guaranteed by the U.S. and Ohio Constitutions."
 {¶ 15} "[3.] The trial court's denial of certain exceptions to the First Amended Inventory is against the manifest weight of the evidence."
 {¶ 16} "Within three months after the date of the executor's or administrator's appointment * * * the executor or administrator shall file with the court an inventory * * * of the tangible and intangible personal property of the decedent that is to be administered and that has come to the executor's or administrator's possession or knowledge." R.C. 2115.02. "The representative of an estate has an obligation and mandatory duty to seek out and collect every asset belonging to the decedent at the time of his death and include it in the estate." In reEstate of Ewing, 3rd Dist. No. 5-03-03, 2003-Ohio-4734, ¶ 12, citing R.C. 2113.25. Thus, the items to be included in the inventory of an estate are not limited to items in the estate's actual possession.
 {¶ 17} "Upon the filing of the inventory [of a decedent's estate] required by section 2115.02 of the Revised Code, the probate court forthwith shall set a day * * * for a hearing on the inventory." R.C. 2115.16. "Exceptions to the inventory * * * may be filed at any time prior to five days before the date set for the hearing * * * by any person interested in the estate or in any of the property included in the inventory * * *." Id.
 {¶ 18} "The hearing of exceptions to an inventory under Section 2115.16, Revised Code, is a summary proceeding by the Probate Court to determine whether those charged *Page 5 
with the responsibility therefore (sic) have included in a decedent's estate more or less than such decedent owned at the time of his death."In re Estate of Gottwald (1956), 164 Ohio St. 405, at paragraph one of the syllabus. "Incidental to such hearing, the Probate Court can determine title to personal property included in such inventory, but it is a matter of discretion whether such summary proceeding shall be employed or the exceptor ordered to pursue other remedies." Id., at paragraph two of the syllabus.
 {¶ 19} A probate court's determination regarding the inventory and any exceptions thereto is generally reviewed under an abuse of discretion standard. In re Estate of Shelton, 154 Ohio App.3d 188, 2003-Ohio-4593, at ¶ 8 (citations omitted); In re Estate of Scott, 164 Ohio App.3d 464,2005-Ohio-5917, at ¶ 2 (citations omitted).
 {¶ 20} In his first assignment of error, Richard argues the probate court erred by approving the Amended Inventory, which he claims included stock in L. T. Boccia Construction that is the subject of the pending lawsuit, Boccia v. Boccia, in the Trumbull County Court of Common Pleas. Richard asserts "the probate court could have simply noted that this stock was the subject of other litigation and that the inventory was approved except for the disputed stock."
 {¶ 21} Initially, we note the probate court did not make any finding regarding the twenty shares of stock allegedly inherited by Richard from his mother. This stock is not identified in the Schedule of Assets filed by the co-executrices, or in Richard's Exceptions to the Inventory, or in the probate court's Judgment Entry ruling on the Exceptions.
 {¶ 22} The probate found "that Louis T. Boccia, deceased, was the owner of L. T. Boccia Construction, Inc.," but made no reference to stock ownership. There was evidence before the probate court that Richard's mother bequeathed to him twenty shares *Page 6 
of stock upon her death. However, the Executor's Account for the mother's estate indicated these shares were converted to cash before being distributed to Richard, and the share journal for L. T. Boccia Construction indicates that the mother's shares were cancelled in 1977, shortly after her death. According to the share journal, the only persons to ever own stock in L. T. Boccia Construction were Louis and Richard's mother. At the hearing, Richard admitted that he did not possess any physical stock certificates. This evidence supports the finding that Louis was the owner of L. T. Boccia Construction. The narrower issue of whether the mother's twenty shares, in fact, exist and whether Richard owns them was not considered or ruled upon by the probate court.
 {¶ 23} The stock issue was raised in the shareholders' derivative action filed by Richard in common pleas court, which action was pending during the probate proceedings.
 {¶ 24} On February 20, 2007, the common pleas court entered a Judgment Entry finding that "it is in the best interests of the parties that the disposition or sale of [certain] assets be referred to [Probate] Court." Specifically, "[t]he sale and disposition of the equipment, supplies, construction materials and scrap owned by the L. T. Boccia Construction Company, Inc. shall be and hereby is referred to the Honorable Thomas A. Swift, Judge of the Trumbull County Court of Common Pleas, Probate Division, for sale or other disposition as the aforesaid Judge shall deem appropriate in accordance with his discretion."[1]
 {¶ 25} Consistent with the common pleas court's Entry, the probate court ruled on the disposition of equipment, supplies, construction materials, and scrap included in the Amended Inventory. The common pleas court Entry did not purport to defer any of the *Page 7 
pending stock issues before it to the probate court. As noted above, the probate court made no express findings regarding L. T. Boccia Construction Company stock.
 {¶ 26} Contrary to Richard's position, the stock issue is not res judicata by virtue of the probate court's approving the Amended Inventory. This court has previously held that a ruling on objections to an estate inventory does not bar a subsequent claim to an estate's asset unless "the probate court has actually litigated [the] claim regarding a particular asset." In re Estate of Kelsey, 165 Ohio App.3d 680,2006-Ohio-1171, at ¶ 22, citing Bolles v. Toledo Trust Co. (1940),136 Ohio St. 517. As demonstrated above, the probate court's Judgment Entry determining Richard's Exceptions made no finding regarding the stock allegedly inherited. Richard is not barred, by the doctrine of res judicata, from pursuing these claims in the lawsuit pending in common pleas court. Cf. Gottwald, 164 Ohio St. 405, at paragraph four of the syllabus (where an estate inventory included the decedent's margin account, which allegedly contained stock owned by the exceptor to the inventory, the probate court did not abuse its discretion by refusing to conduct an accounting between the exceptor and the estate and allowing the exceptor to pursue other remedies).
 {¶ 27} The first assignment of error is without merit.
 {¶ 28} In the second assignment of error, Richard argues that the proceedings below were fundamentally unfair in that he bore the burden of proving that the inventoried assets were his, when they had been located on his property for several years. Richard cites case law for the proposition that, where "any question of fact or liability be conclusively presumed against [a litigant], such is not due process of law." Williams v. Dollison (1980), 62 Ohio St.2d 297, 299. *Page 8 
 {¶ 29} The law is well-settled that the exceptor, as the party challenging the inventory, has the burden of going forward with evidence challenging the estate's inventory. In re Estate of Workman, 4th Dist. No. 07CA39, 2008-Ohio-3351, at ¶ 14 (citations omitted); In re Estate ofBrunswick, 12th Dist. No. CA2006-08-096, 2007-Ohio-5396, at ¶ 11
(citations omitted).[2]
 {¶ 30} Ownership of the assets in question were already the subject of litigation between Richard and Louis pending since 1999. Ownership was a disputed issue at the time of Louis' death in 2006. Although the equipment and other items may have been on Richard's property for several years, it is undisputed that during these years Richard was an employee of his father's construction company and that company equipment was regularly stored on the property. Litigation over ownership commenced within months of the termination of Richard's employment with L. T. Boccia Construction. In a Judgment Entry dated September 18, 2006, the probate court took judicial notice of the two cases pending in common pleas court involving Richard and his father. The court stated: "Each party hereto * * * claims that property belonging to that party is located on premises subject to the control of the other party. The Court finds that it is in the best interests of the Estate that counsel for each party be granted the right to inspect the property owned by and/or controlled by the other party to determine if specific property is located therein."
 {¶ 31} Contrary to Richard's claims, there was no conclusive presumption against his ownership of the equipment. While he bore the burden of production at trial, this initial burden was met by the fact that the inventoried assets were located on his property. *Page 9 
Accordingly, the estate was required to, and did in fact, introduce evidence regarding its ownership of the assets at issue. As a practical matter, the hearing was conducted as though the estate bore the burden of going forward with the evidence.
 {¶ 32} After considering the evidence presented by both parties, discussed more fully below, the probate court ruled on Richard's exceptions, allowing some and denying others based on the evidence before it. In these circumstances, there was nothing unfair about the manner in which the probate court conducted these proceedings.
 {¶ 33} The second assignment of error is without merit.
 {¶ 34} In his third assignment of error, Richard argues the probate court's denial of "certain exceptions" to the Inventory is against the manifest weight of the evidence.
 {¶ 35} Under the civil manifest weight of the evidence standard, "[judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." State v.Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, at ¶ 24, quoting C.E. MorrisCo. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, at syllabus. "A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." Id., quoting Seasons Coal Co., Inc. v. Cleveland (1984),10 Ohio St.3d 77, 81.
 {¶ 36} At the hearing on the exceptions, the probate court heard testimony from Richard, co-executrix Rickard, estate appraiser Dangerfield, and Attorney Michael Scala, who represented Louis in the litigation with Richard. Richard and Rickard gave testimony regarding the individual items identified in the appraisers report. Many of the items in dispute were dump trucks/trailers and scrap. Typically, their testimony related to the *Page 10 
circumstances in which the item was acquired, by whom it was acquired, and what purpose it served. Richard's testimony was almost entirely from memory.[3] Rickard testified from memory but also introduced, as exhibits, certificates of title, invoices, and other documents which she claimed related to the items in dispute.
 {¶ 37} Dangerfield testified that in only two instances was he able to positively identify vehicles located on Richard's property with title documents in Rickard's possession. Dangerfield also testified he was only able to positively identify two vehicles because the vin numbers and other identifying tags had been physically removed from the vehicles. Although there was no evidence regarding who had removed the tags, Dangerfield noted that their removal had appeared to have occurred in the relatively "recent past."
 {¶ 38} Despite the lack of identification numbers/tags, Dangerfield tried to match vehicles with the documents possessed by the estate by other identifying features, such as construction company markings and physical descriptions. Dangerfield testified that, while no other vehicles could be positively identified, none of the vehicles could be positively excluded as not belonging to Louis/L. T. Boccia Construction. In other words, the estate possessed documentation matching the description of the disputed vehicles, although it could not be conclusively shown that disputed vehicles are the ones described in the documentation.
 {¶ 39} Dangerfield testified that no attempt was made to match miscellaneous items such as scrap with estate documents. *Page 11 
 {¶ 40} On appeal, Richard identifies "two factors" tending to make his testimony more credible than the estate's: "(1) the property in dispute was on Richard's * * * property for at least 10 years, though in many cases well over 20 years, and (2) in 2002, prior to his death, Louis and his agents were given a court ordered opportunity to retrieveall of Louis' or the Company's claimed property from Richard's land."
 {¶ 41} The first factor is of minimal probative value. Richard worked for Louis/L. T. Boccia Construction since the time before his acquisition of the State Street property until the end of 1998. According to Richard's own testimony then, the disputed property was placed on his land during the period of his employment with his father. The crucial issue is not how long Richard has had possession, but whether he acquired the property independent of L. T. Boccia Construction.
 {¶ 42} The second factor is also of limited probative value. In April 2002, the common pleas court, as part of the continuing litigation between Richard and his father, entered an order that L. T. Boccia Construction "shall be permitted to retrieve scrap, tools and equipment at the address of 1700 1710 North State St., Girard, * * * beginning on Friday, April 5, 2002, * * * until the trial date of April 29, 2002." The court further ordered: "All property used, sold, encumbered, or otherwise removed from the above listed address shall be accounted for with a formal accounting to be submitted to this court * * *. All remaining inventory of material, tools, and equipment shall also be listed on an inventory to be filed in this court * * *."
 {¶ 43} At the hearing on the Exceptions in the present case, Attorney Scala testified that Louis was unable to retrieve all of the scrap, tools, and equipment from Richard's *Page 12 
property within the time prescribed by the court. Scala testified that it was not Louis' intention to abandon his claim to the material left on Richard's property.
 {¶ 44} Contrary to Richard's interpretation of the common pleas court order, Louis was not required to remove all the scrap, tools, and equipment from Richard's property within the time allotted or waive his rights to the remaining property. The court's order clearly intended all property claimed, whether removed or not, should be inventoried and filed with the court pending a final determination. Accordingly, the fact that all the items claimed by Louis were not removed from Richard's property in 2002 is not probative of true ownership or of an intention to abandon these items.
 {¶ 45} Beyond these general assertions, Richard only makes one specific challenge to the probate court's ruling on his Exceptions. Three of the excepted items were a "paving roller [in] poor cond.," a "paver roller scrap," and a "roller scrap."
 {¶ 46} With respect to these items, co-executrix Rickard testified as follows:
 {¶ 47} "Counsel: Did the company have a number of paving rollers?"
 {¶ 48} "Rickard: Yes. Yes."
 {¶ 49} "Counsel: And do you know if the ones that are sitting on the property on North State Street that belong to Richard Boccia, were they moved there by the company?"
 {¶ 50} "Rickard: Yes. Yes. And also Lou bought some of them. I remember the one he bought in Hubbard, Ohio. * * * He bought another piece of equipment. I can't remember what it's called. They don't have anymore of those on the property because Lou sold it." *Page 13 
 {¶ 51} "Counsel: You're referencing Exhibit DD?"[4]
 {¶ 52} "Rickard: As a roller that was purchased by the L. T. Boccia Construction Company."
 {¶ 53} "Counsel: Is this roller still on the property?"
 {¶ 54} "Rickard: Yes, it's on the property."
 {¶ 55} With respect to these items, Richard testified he did not remember one of the rollers, another one was purchased from a Eddie Yasechko in the 1980's, and the third one was purchased from City Asphalt in the early 1970's.
 {¶ 56} Both Rickard's and Richard's testimony constitutes competent, credible evidence as to the ownership of the scrap rollers on Richard's property. Moreover, the probate court was entitled to infer from the fact that the scrap rollers were located on Richard's property that they belonged to him, as well as to infer from the fact that Richard was an employee of L. T. Boccia Construction at the time of the acquisition of the rollers that belonged to the company. Since there is some evidence to support the probate court's finding, its judgment "must be affirmed."Wilson, 2007-Ohio-2202, at ¶ 26, citing C.E. Morris Co.,54 Ohio St.2d 279, at syllabus.
 {¶ 57} Finally, Richard argues the probate court's determination that Louis was the owner of L. T. Boccia Construction is against the manifest weight of the evidence, given the testimony that Richard inherited twenty shares of stock from his mother. For the reasons set forth under the first assignment of error, there is competent, credible evidence to support the determination that Louis was the owner of L. T. Boccia Construction, but *Page 14 
that the issue of Richard's ownership of twenty shares of stock was not part of the Inventory/Exceptions to Louis' estate and not ruled upon by the probate court.
 {¶ 58} The third assignment of error is without merit.
 {¶ 59} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas, Probate Division, granting in part, and denying in part, Richard's Exceptions to Inventory of the Estate of Louis T. Boccia, is affirmed. Costs to be taxed against appellant.
CYNTHIA WESTCOTT RICE, J., concurs,
COLLEEN MARY OTOOLE, J., concurs in judgment only.
[1] R.C. 2101.04(B)(1)(a) expressly provides that the probate court and the general division of the court of common pleas may, in certain circumstances, share concurrent jurisdiction over "particular subject matter."
[2] Depending on the situation, the burden of proof in inventory proceedings may fall on the estate. See, e.g. In re Estate ofThatcher, 6th Dist. No. F-07-004, 2008-Ohio-473, at ¶ 8 (when the exceptor challenges credits and/or disbursements taken by the estate's administrator, the administrator bears the burden of demonstrating the propriety of the credit) (citations omitted).
[3] In the instances where Richard was able to produce a title or other documentation indicative of ownership, the probate court allowed the exception.
[4] Exhibit DD does not relate to rollers. Estate Exhibit VV, however, is a folder containing hand-written notes with bids for various rollers and a notice advertising a roller "for sale" by the City of Hubbard. Exhibit VV was admitted into evidence but is not otherwise referenced in the testimony. *Page 1