[Cite as *In re Estate of Millstein*, 2021-Ohio-4610.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

ESTATE OF JOSHUA MILLSTEIN,    :          No. 110546
DECEASED                   :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 30, 2021

---

Civil Appeal from the Cuyahoga County Probate Court
Case No. 2018EST231387

---

***Appearances:***

Hahn Loeser & Parks L.L.P., Dennis R. Rose, and Casey J. McElfresh, *for appellee Matthew E. Henoch, Administrator of the Estate of Joshua Millstein, Deceased.*

Schraff Thomas Law, L.L.C. and John P. Thomas, *for appellee Dianne Millstein.*

Baker & Hostetler L.L.P., Kevin G. Robertson, and Kevin R. McKinnis; Larry Weiser, P.A., and Larry Weiser, *for appellant, Larry Weiser, Curator of the Estate of Norman Millstein, Deceased.*

MARY J. BOYLE, A.J.:

{¶ 1} Appellant, Larry Weiser ("Weiser"), Curator of the Estate of Norman Millstein, Deceased ("Norman's Estate"), appeals the judgment of the Cuyahoga County Court of Common Pleas, Probate Division, finding that a settlement agreement that Norman Millstein ("Norman") had entered with the Estate of Joshua

Millstein, Deceased ("Joshua's Estate") precluded the probate court from hearing Norman's exceptions to the final accounting of Joshua's Estate, related discovery motions, and a motion to remove appellee Matthew Henoch ("Henoch") as administrator of Joshua's Estate ("Disputed Motions"). Weiser raises three assignments of error for our review:

> 1. The probate court erred in determining that a settlement agreement reached in unrelated trust litigation precludes Weiser, as Curator of Norman's Estate, from asserting Norman's and, now, Norman's Estate's property rights as beneficiary of Joshua's Estate.

> 2. The probate court erred in determining that the settlement agreement operated to absolve the probate court of its duty to hear facts and issues raised by Norman and, now, Norman's Estate that may be essential for the probate court to supervise the conduct of Henoch, whom the probate court appointed to administer Joshua's Estate.

> 3. The probate court erred in determining that the settlement agreement operated to absolve the probate court of its duty to hear and consider facts or issues presented by Norman and, now, Norman's Estate regarding potential breaches of fiduciary duty and/or conflicts of interest that may cause Henoch to be unable to administer Joshua's Estate impartially.

{¶ 2} The first assignment of error is dispositive. The second and third assignments of error are derivative of the first and not well taken. Finding no merit to these assignments of error, we affirm the probate court's judgment.

## I. Facts and Procedural History

{¶ 3} On December 23, 2017, Joshua Millstein ("Joshua") died intestate without a spouse or children. Pursuant to R.C. 2105.06(F), Joshua's divorced parents, Norman and Dianne Millstein, were identified as equal beneficiaries of Joshua's Estate.

{¶ 4} On January 18, 2018, Henoch applied to administer Joshua's Estate. Dianne Millstein ("Dianne") consented to Henoch's appointment. Norman initially objected to Henoch's appointment but consented on the condition that Henoch post and maintain a $300,000 bond and agree to provide Norman and Dianne with copies of all court filings, creditors' claims against Joshua's Estate, tax filings made on behalf of Joshua's Estate, and any information Ohio law requires an administrator of an estate to provide to beneficiaries concerning an estate's assets and liabilities. Henoch was appointed as administrator of Joshua's Estate on March 20, 2018, and posted the required bond the following day.

{¶ 5} On May 11, 2018, DCM Services on behalf of American Express submitted a creditor's claim against Joshua's Estate in the amount of $45,934.05. On June 29, 2018, PayPal Credit submitted a creditor's claim against Joshua's Estate in the amount of $2,958.43.[1]

{¶ 6} On August 8, 2018, Henoch filed an initial inventory without appraisal valuing Joshua's Estate's total assets at $194,358.70, divided between tangible personal property at $180,106.88 and intangible personal property at $14,251.82. The probate court set an inventory hearing for August 29, 2018. Norman and Dianne separately received and waived notice of a hearing on the inventory without objecting to the inventory. The probate court approved the inventory on August 30, 2018.

---

[1] Henoch subsequently rejected PayPal Credit's claim as untimely filed under R.C. 2117.06.

{¶ 7} On September 4, 2018, Henoch posted an additional bond of $90,000 by order of the court for newly discovered assets. On November 6, 2018, Henoch filed a report of newly discovered assets that included 12 firearms with a total appraised value of $15,610, which, when combined with an $1,823 refund from a homeowner's insurance policy, increased the estate's total value to $211,791.70. On November 13, 2018, the probate court granted the report of newly discovered assets as if reported as part of the initial inventory.

{¶ 8} On January 7, 2019, Henoch filed a satisfaction and release of American Express's creditor's claim of $45,934.05.

{¶ 9} On May 29, 2019, Henoch filed the final fiduciary account based on the total inventory and moved for extraordinary attorney fees for administering Joshua's Estate. In the motion, Henoch offered several reasons supporting his request for extraordinary fees. First, before his death, Joshua had "maintained a collection of 84 dangerous poisonous snakes," which were illegal, seized, and cared for by the Ohio Department of Agriculture ("ODA"). The ODA made a claim of $24,000 against Joshua's Estate that Henoch was able to settle for no money from the estate and safe disposition of the snakes. Also, the Pepper Pike Police Department ("PPPD") seized and held Joshua's collection of 12 firearms, including several semi-automatic rifles, which Henoch arranged to have appraised and legally sold pursuant to federal firearm regulations. Further, Joshua had not filed federal, state, or RITA tax returns for the tax years 2015-2017, which Henoch worked with accountants to reconstruct and file. Finally, Norman had initially objected to

Henoch's appointment as administrator, which required negotiation to obtain Norman's consent.

{¶ 10} On July 8, 2019, the probate court scheduled a hearing on its own motion to review Henoch's final fiduciary account and ordered that the account be amended to reflect all receipts and disbursements of assets.

{¶ 11} On July 16, 2019, Norman signed a settlement agreement and release ("Settlement Agreement") resolving three different lawsuits Norman had filed against another son, Kevan Millstein ("Kevan"), and various other Millstein parties, and one lawsuit Kevan had filed against Norman to have Norman declared a vexatious litigator.[2] The Settlement Agreement provided in pertinent part:

> 10. Norman, for himself and on behalf of his heirs, executors, successors and assigns, hereby fully releases, forever discharge [sic], and covenants not to sue any and every person and entity comprising the Millstein Parties, along with their respective successors, partners, members, managers, owners, assigns, predecessors, parent corporations, subsidiaries, officers, directors, employees, affiliates, agents, and representatives from (and with respect to) any controversies, causes of action, actions, proceedings, claims, suits, arbitrations, damages, judgments, liabilities, or losses related in any way to any matter involving such parties [sic], whether in law or in equity, whether contract or tort, whether fixed or contingent, whether known or unknown, which Norman ever had, now has or hereafter has (except arising from a breach of this Settlement Agreement), shall or may have from the beginning of time, it being the intent of the Parties that the releases and covenants shall encompass all past, present and future disputes and shall be given the broadest possible interpretation.

---

[2] Norman filed two complaints in the Cuyahoga County Court of Common Pleas, Probate Division: Case Nos. 2014ADV200391 and 2015ADV21240. Norman also filed a complaint in the Cuyahoga County Court of Common Pleas, General Division: Case No. 17CV883760. Kevan filed a complaint in the Cuyahoga Court of Common Pleas, General Division: Case No. 17CV886352.

Joshua's Estate was a named party to the Settlement Agreement.

{¶ 12} The same day, July 16, 2019, Henoch filed an amended motion for extraordinary attorney fees based on the same reasons as the first motion. Neither Norman nor Dianne objected to the amended motion. On July 22, 2019, the probate court granted the motion.

{¶ 13} On August 9, 2019, Henoch filed an amended final fiduciary account, showing an inventory of $211,791.70, total receipts of $208,752.17, total administration costs and expenses charged against Joshua's Estate in the amount of $179,863.53, and total assets of $28,888.64 to be equally distributed to Norman and Dianne.

{¶ 14} On September 5, 2019, Norman filed several exceptions to Henoch's amended final fiduciary account. Specifically, Norman argued that Henoch's inventory of assets omitted several items, including a significant coin collection and other valuables believed to be stored in Joshua's home safe, several high-definition televisions and computer equipment Joshua was believed to have purchased prior to his death, an antique pool table, several large aquariums and terrariums, and a significant amount of new furniture. Norman believed that these items were not reflected in the miscellaneous household goods and furnishings inventory valued at $500 and another section labeled "video equipment" valued at $5,906.88. Norman requested a review of Joshua's homeowner's policy to determine if Joshua might have had this personal property itemized under a tangibles rider. Further, Norman requested review of Joshua's credit card statements to determine if the statements

included the televisions and computer equipment believed to form part of the $45,934.05 paid in satisfaction of American Express's creditor's claim.

{¶ 15} Norman also took exception to several disbursements, including $10,000 to Karen Carmen for cleaning Joshua's residence and removing its contents; a substantial sum designated as reimbursement to a Millstein family trust, the Al-Jo Trust, for tax payments on Joshua's residence, which was titled to the Joshua Millstein Trust and therefore not part of Joshua's Estate;[3] two entries for $10,450 and $18,846.34 designated "payment of decedent's bills"; $3,000 to transfer two of Joshua's dogs; and payments of $3,100 and $600 to attorney Fred Carmen ("Carmen") for legal services provided prior to Joshua's death.

{¶ 16} On September 16, 2019, the probate court held an accounting hearing. The court scheduled additional accounting hearings on October 7 and December 12, 2019, and January 6, 2020, to hear Norman's exceptions.

{¶ 17} On December 13, 2019, Weiser filed notice of appearance as co-counsel for Norman.

{¶ 18} On December 19, 2019, Henoch filed a second report of newly discovered assets that included $8,620 in cash the PPPD recovered from Joshua's home on the night of his death. On December 31, 2019, the probate court granted the second report of newly discovered assets as if reported as part of the initial inventory.

---

[3] Kevan Millstein is trustee of the Al-Jo Trust. Joshua Millstein was trustee of the Joshua Millstein Trust. After Joshua's death, Alana Millstein ("Alana"), Joshua's sister, became successor trustee of the Joshua Millstein Trust.

{¶ 19} On January 13, 2020, the probate court scheduled trial for February 24, 2020.

{¶ 20} The same day, January 13, co-counsel for Norman entered notice of appearance as co-counsel for Dianne. On January 14, 2020, co-counsel for Norman and Dianne moved for Henoch's removal as administrator of Joshua's Estate, asserting breach of fiduciary duties, negligent conversion of estate assets, concealment of assets, and conflict of interest.

{¶ 21} Specifically, the motion argued that Henoch breached his fiduciary duties by hiring a third-party appraiser to appraise personal property in Joshua's home but blocking the appraiser's full access to the home; making no effort to distinguish Dianne's personal property from Joshua's since Dianne had moved out of the home about ten years before; and failing to produce records in response to Norman's requested accounting for $45,000 in credit card purchases, $100,000 in aquarium and terrarium equipment, and $50,000 in collectible coins.

{¶ 22} The motion also argued that Henoch negligently converted estate assets by paying Carmen over $18,000 for work benefitting neither the estate nor the heirs,[4] and over $17,000 in real estate taxes for Joshua's residence in reimbursement of the Al-Jo Trust after Carmen purchased the residence from the Joshua Millstein Trust and resold it for a substantial profit.

---

[4] In his September 5, 2019 exceptions to Henoch's amended first and final fiduciary account, Norman contested payments to Carmen totaling $3,700 for services Carmen rendered to Joshua prior to Joshua's death. However, in his January 14, 2020 motion to remove Henoch as administrator, Norman alleged that these payments exceeded $18,000.

**{¶ 23}** The motion further argued that Henoch had a conflict of interest because Henoch's law firm represented Carmen in preparing the deed transferring Joshua's house and continued to represent Kevan despite his and Norman's prior litigation. Norman believed that Joshua's house contained several highly valuable items of personal property that belonged to Joshua's Estate but were transferred with the house.

**{¶ 24}** Finally, the motion argued that Henoch concealed estate assets, specifically the cash held by the PPPD from the night of Joshua's death on December 27, 2018, until Henoch disclosed its existence in the report of newly discovered assets that he filed on December 12, 2019.

**{¶ 25}** On January 28, 2020, Henoch filed a brief opposing his removal. In the brief, Henoch explained that the first time he entered Joshua's residence was on March 21, 2018, when the house was being staged for sale. He also noted that moveable items were stored in the garage to unclutter the house, so the appraiser had no reason to enter the house.

**{¶ 26}** Henoch also observed that Joshua's sister, Alana, had been appointed successor trustee of the Joshua Millstein Trust, which owned Joshua's house, and the sales contract expressly provided that sale of the home included sale of the home's furniture and appliances. Henoch stated that before selling the house, Carmen had identified and separated items of personal property belonging to Joshua's Estate from those belonging to Dianne, who had acquired them as part of

her divorce from Norman, and from those belonging to the Joshua Millstein Trust as owner of the house.

{¶ 27} Henoch further explained that based on his investigation, Henoch believed Joshua never owned any collectible coins, but rather had used the coins to trade in contraband. Henoch offered a similar explanation for the cash discovered in Joshua's home. Henoch believed that the PPPD police had seized the cash, suspecting that it was tied to illicit activities. The cash was later released to a private investigator hired by the Millstein family to investigate whether Joshua's death resulted from foul play. Henoch alleged that most of his interactions with the PPPD concerned transfer of Joshua's firearms collection and that Henoch only later discovered from Norman's counsel that the police had also seized cash that they should have turned over to Henoch as the administrator of Joshua's Estate. Henoch referred to the police's turning over the cash to the family's private investigator as an "honest mistake." Henoch noted that when he finally obtained the cash, it was still wrapped in a plastic bag marked "evidence," and its chain of custody was then related to him. Concerning the aquariums and terrariums, Henoch observed that Joshua may have spent a lot of money on installing custom aquariums and terrariums to house his reptiles, but they had since been dismantled and had little second-hand value. Henoch therefore believed donation to be the proper way of disposing of these assets.

{¶ 28} Henoch explained that Carmen represented Joshua during his lifetime, including in several criminal matters involving ownership of the snakes.

Henoch stated that Carmen also provided services after Joshua's death, including the night of his death and before Henoch's appointment as administrator. Henoch believed Carmen's bills were reasonable and paid them. Henoch also explained that the tax bill for Joshua's residence was issued to Joshua as trustee of the Joshua Millstein Trust, which held legal title to the residence, and was paid by Kevan as trustee of the Al-Jo Trust. Henoch believed reimbursing the Al-Jo Trust was appropriate rather than rejecting the claim and potentially subjecting Joshua's Estate to litigation.

{¶ 29} Finally, Henoch argued that Norman's exceptions were time-barred because Norman did not file exceptions to the inventory that Henoch had filed on August 9, 2018, and the court had approved this inventory on August 30, 2018.

{¶ 30} On February 10, 2020, Norman subpoenaed Carmen to produce documents for inspection and testify concerning any transfer of personal property that belonged to Joshua's Estate but may have been transferred with the house when Carmen resold it. On February 12, 2020, Dianne filed a notice of substitution of counsel and a withdrawal of her support for the motion to remove Henoch as administrator of Joshua's Estate. On February 14, 2020, Carmen moved to quash the subpoena, arguing that Norman's exceptions to the amended final fiduciary account were time-barred, as well as barred by the Settlement Agreement.

{¶ 31} On February 19, 2020, the probate court cancelled the trial originally scheduled for February 24 and scheduled a status conference for February 26.

{¶ 32} On February 26, 2020, Dianne filed a brief opposing Norman's motion to remove Henoch as administrator. In the brief, Dianne argued that she never authorized the motion and that the cost outweighed the benefit of pursuing the alleged personal property and would substantially diminish the remaining assets of Joshua's Estate.

{¶ 33} On March 10, 2020, Norman filed a supplemental brief supporting removal of Henoch and included color photos showing the contents of several rooms in Joshua's house and an itemized list of personal property identified by Joshua's housekeeper, who had cleaned Joshua's house from 2009 until his death. Norman noted that Dianne had instructed Carmen to mail her personal property to her and donate the remainder. Norman argued that Henoch failed to confirm which items of personal property belonged to Dianne and which belonged to Joshua's Estate. Norman observed that Carmen made donations in his own name totaling $13,570 and argued that Henoch should have itemized the donations, their true values, and credited them to the beneficiaries.

{¶ 34} On May 7, 2020, the court found in its judgment entry that the Settlement Agreement's provision precluding Norman from suing Joshua's Estate also precluded the Disputed Motions. However, the court also ordered an additional 30 days so that the parties might submit briefs on the applicability of the Settlement Agreement to the Disputed Motions.

{¶ 35} On June 10, 2020, co-counsel for Norman filed a suggestion of death, informing the court that Norman died on May 25, 2020. Co-counsel for Norman

also filed an accompanying motion to stay proceedings for 45 days to allow a personal representative to be appointed to represent the interests of Norman's Estate. Dianne filed a brief opposing Norman's request to stay proceedings as an unnecessary waste of time and expense and requesting that any further fees, costs, or expenses incurred in pursing the matter be assessed against Norman's share of Joshua's Estate. On June 17, 2020, the probate court granted Norman's request to stay proceedings for 45 days.

{¶ 36} On August 4, 2020, Weiser and Norman's surviving spouse, Leslie Millstein ("Leslie"), applied in Florida to be co-representatives of Norman's Estate and again requested the probate court to stay proceedings until the Florida court ruled on their application. In anticipation of the Florida court's approval of their application, Weiser submitted a brief arguing that the Settlement Agreement did not preclude the Disputed Motions.[5]

{¶ 37} In the brief, Weiser argued that the Settlement Agreement only precluded Norman from filing lawsuits against the Millstein parties, including Joshua's Estate. Weiser argued that the Disputed Motions before the probate court were not lawsuits against Joshua's Estate, but rather Norman's "participation in the probate process of an estate in which he is an heir." Weiser also argued that if the Disputed Motions were to be construed as "lawsuits," they were not lawsuits filed against Joshua's Estate, but rather against the administrator of Joshua's Estate.

---

[5] The Florida court denied Leslie's application. Weiser was later appointed sole representative of Norman's Estate.

Finally, Weiser argued that to interpret the Settlement Agreement as precluding these filings violates public policy by permitting serious violations of fiduciary duties, if proven. Weiser attached the Settlement Agreement to his brief.

{¶ 38} On August 11 and 31, 2020, Henoch and Dianne filed their respective briefs in opposition. Henoch and Dianne both argued that the Settlement Agreement precluded the Disputed Motions.

{¶ 39} On September 4, 2020, Henoch filed notice of potentially newly discovered assets, Joshua's possible 10 percent interest in Stone Creek, Inc., an Ohio corporation formed by Norman and from which Norman allegedly withdrew $5 million in assets during his lifetime, giving Joshua's Estate a possible $500,000 claim against Norman's Estate.

{¶ 40} On September 24, 2020, Weiser filed a response to Henoch's notice of potentially newly discovered assets, in which he also argued that a Florida office of Hahn Loeser, Henoch's firm, was contesting Weiser's appointment as representative of Norman's Estate.

{¶ 41} On October 6, 2020, the probate court issued a judgment entry denying the Disputed Motions, finding that the Disputed Motions were actions or claims prohibited by the Settlement Agreement. The probate court also found that the inventory and final accounting were filed and approved without objection. The probate court rejected Weiser's argument that interpreting the Settlement Agreement to preclude the Disputed Motions violated public policy by permitting Henoch's possible breach of fiduciary duty. The probate court found that it had

supervised Henoch's administration of Joshua's Estate by reviewing and verifying the inventory and final accounting. The probate court noted that the Settlement Agreement had been drafted "for the specific purpose of prohibiting Norman Millstein and/or his representatives or Estate from continuing to waste beneficiary and Court resources by continued and often frivolous filings in every action to which he was a party."

{¶ 42} On January 11, 2021, Weiser notified the probate court that he was appointed curator of Norman's Estate and moved to substitute Norman's Estate officially as heir of Joshua's Estate and the proper party to the proceedings.

{¶ 43} On January 27, 2021, Weiser, now on behalf of Norman's Estate, moved to vacate the October 6, 2020 judgment entry, arguing that the order had been "improvidently issued" because Norman's Estate had not yet appeared as a substitute and necessary party to the proceedings.

{¶ 44} On February 8, 2021, Henoch filed a brief opposing Norman's Estate's motion to vacate the judgment, arguing that Weiser and his co-counsel had participated in proceedings during Norman's lifetime and had filed the Disputed Motions that the probate court denied in its October 6, 2020 judgment entry. Henoch argued that further proceedings would unnecessarily increase administration costs and delay final distribution. The same day, Dianne filed a brief opposing the motion and arguing that no procedural infirmity or prejudice attended the judgment, and Weiser's request to vacate the judgment had no legal basis. On February 9, 2021, Weiser filed a reply brief citing law supporting his argument that

the probate court lacked jurisdiction to issue the judgment before Weiser could enter an appearance as a substitute party.

{¶ 45} On February 17, 2021, the probate court ordered Weiser, as representative of Norman's Estate, a substitute party for Norman, as beneficiary of Joshua's Estate. The probate court also vacated its October 6, 2020 judgment entry and permitted Weiser, now as representative of Norman's Estate, 30 days to file a brief showing that the Settlement Agreement did not preclude the Disputed Motions.

{¶ 46} On March 17, 2021, Weiser filed his brief, "ratifying" arguments he made in his August 4, 2020 brief and explaining the four-month delay in challenging the probate court's October 6, 2020 judgment entry. Weiser stated that Norman's surviving children had opposed Leslie's appointment as co-representative of Norman's Estate and had filed will and trust contests in Florida. Weiser argued that the Florida proceedings and ancillary proceedings related to Norman's Estate had absorbed his attention. Weiser compared the will and trust contests to the Disputed Motions, arguing that neither was precluded by the Settlement Agreement. Weiser requested a protective order based on the Settlement Agreement's confidentiality. On April 2, 2021, Henoch replied by attaching his August 11, 2020 response to Weiser's August 4, 2020 brief.

{¶ 47} On April 5, 2021, Weiser filed a sur-reply brief emphasizing the probate court's responsibility for supervising Henoch's administration of Joshua's Estate and noting the ongoing relationship among Henoch's law firm, Carmen, and

the surviving Millstein children who were involved in various proceedings against Norman's Estate.

{¶ 48} On May 4, 2021, the probate court again denied the Disputed Motions, reissuing findings from its October 6, 2020 order. Additionally, the probate court found that the Florida proceedings were not within its jurisdiction, had "no bearing on [its] interpretation of the language of the Settlement Agreement," and "any alliance of parties and their counsel in the Florida disputes [was] irrelevant to uncontested actions taken by [Henoch, as administrator,] more than two years prior to Norman Millstein's death." The probate court also denied Weiser's request for a protective order maintaining the Settlement Agreement's confidentiality because Weiser attached the Settlement Agreement to his August 4, 2020 brief and incorporated language from the Settlement Agreement into his brief.

{¶ 49} Weiser, as representative of Norman's Estate, appeals this order.

## II. Law and Analysis

{¶ 50} In his first assignment of error, Weiser argues that the probate court erred in determining that the Settlement Agreement "preclude[d] Norman [and now precludes Weiser as representative of Norman's Estate] from asserting his property rights as a beneficiary" of Joshua's Estate. We disagree. A trial court's enforcement of a settlement agreement is reviewed for an abuse of discretion if the issue presents an evidentiary or factual question. *Tabbaa v. Koglman*, 8th Dist. Cuyahoga No. 84539, 2005-Ohio-1498, ¶ 15. However, if the issue presents a question of contract law, then the reviewing court must determine whether the trial court

applied an erroneous standard or misconstrued the law. *Id.*, citing *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502, 660 N.E.2d 431 (1996). "[A] settlement agreement is a contract designed to terminate a claim by preventing or ending litigation." *Continental W. Condominium Unit Owners Assn.* at *id.* Interpretation of a written contract is a question of law reviewed de novo. *In re All Kelley & Ferraro Asbestos Cases*, 104 Ohio St.3d 605, 2004-Ohio-7104, 821 N.E.2d 159, ¶ 28.

{¶ 51} When interpreting a written contract, courts must give effect to the parties' intent as expressed in the contract's language. *Saunders v. Mortensen*, 101 Ohio St.3d 86, 2004-Ohio-24, 801 N.E.2d 452, ¶ 9. Common words that appear in a contract will be given their ordinary meaning unless the remainder of the contract clearly shows that the parties intended another meaning. *Cincinnati Ins. Co. v. Anders*, 99 Ohio St.3d 156, 2003-Ohio-3048, 789 N.E.2d 1094, ¶ 34. When the contract contains clear and unambiguous terms, a court may determine the parties' rights and obligations from the contract's plain language. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53, 544 N.E.2d 920 (1989). The court must endeavor, where possible, to give effect to every provision in the contract. *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 362, 678 N.E.2d 519 (1997).

{¶ 52} Weiser argues that the Disputed Motions do not qualify as "lawsuits," which, Weiser admits, are expressly proscribed by the language of the Settlement

Agreement. However, Section 10 of the Settlement Agreement provides a more expansive definition of "suit" than Weiser allows:

> Norman, for himself and on behalf of his * * * executors * * * hereby * * * covenants not to sue any and every person and entity comprising the Millstein Parties, along with their respective * * * representatives * * * with respect to * * * any controversies, causes of action, actions, proceedings, claims, suits, arbitrations, damages, judgments, liabilities, or losses related in any way to any matter involving such parties [sic], * * * it being the intent of the Parties that the * * * covenants shall encompass all past, present and future disputes and shall be given the broadest possible interpretation.

"A 'suit' is defined as '*[a]ny proceeding* by a party or parties against another in a court of law.'" (Emphasis sic.) *Proctor v. Kardassilaris*, 115 Ohio St.3d 71, 2007-Ohio-4838, 873 N.E.2d 872, ¶ 13, quoting Black's Law Dictionary 1475 (8th Ed.2004). A plain reading of the term "covenants not to sue" in Section 10 of the Settlement Agreement includes any action or proceeding "related in any way to any matter" involving a Millstein party. Weiser does not dispute that Joshua's Estate is a "Millstein party" per the Settlement Agreement's other terms. Section 10 of the Settlement Agreement also states that the Millstein parties intended that Norman's covenant would include any "future dispute" and be construed as broadly as possible.

{¶ 53} Each of the Disputed Motions qualifies as "future dispute" as contemplated by the language of the Settlement Agreement. The first dispute arose over the inventory of estate assets that Henoch filed in August 2018. Initially, Norman did not object, and the probate court approved the inventory. Almost a year later, Henoch filed the final fiduciary account and moved for extraordinary fees

based on complexities concerning his administration of Joshua's Estate. The probate court approved Henoch's motion, again without Norman's objection. Then, in September 2019, Norman filed several exceptions to the final fiduciary account.

{¶ 54} In response, Henoch initially argued that the exceptions were time-barred by R.C. 2115 as exceptions to the inventory. However, R.C. 2115.16 provides that "[e]xceptions to the inventory * * * may be filed at any time prior to five days before the date set for the hearing * * * but the time limit for the filing of exceptions shall not apply in case of fraud or concealment of assets." *Urban v. Styblo*, 8th Dist. Cuyahoga Nos. 51908 and 51909, 1987 Ohio App. LEXIS 6930, 5 (Apr. 9, 1987). The probate court had scheduled an inventory hearing date for August 29, 2018. Norman received and waived notice of a hearing without objecting to the inventory. The probate court then approved the inventory on August 30, 2018. The statute would have barred Norman's September 2019 exceptions to the inventory unless Norman asserted fraud or concealment of assets. *See In re Estate of Kelsey*, 165 Ohio App.3d 680, 2006-Ohio-1171, 847 N.E.2d 1277, ¶ 23 (11th Dist.) ("In the case of concealed assets, there is no time limit for the filing of exceptions to the exclusion of that asset from the estate.").

{¶ 55} The usual procedure to recover allegedly concealed assets is to initiate a concealment action in the probate court pursuant to R.C. 2109.50. On January 14, 2020, Norman filed a motion to remove Henoch as administrator, asserting breach of fiduciary duty, conflict of interest, and conversion and concealment of assets. Henoch argues that Norman slipped the concealment claim into his motion to

remove Henoch as administrator to sidestep the Settlement Agreement, which precluded him from filing suit. R.C. 2109.50 reads in relevant part as follows:

> Upon complaint made to the Probate Court * * * against any person suspected of having concealed [assets] * * * of the estate, * * * the court shall by citation or other judicial order compel the person or persons suspected to appear before it to be examined, on oath, touching the matter of the complaint.

Henoch argues that because a concealment action typically begins with a "complaint," Norman's motion to remove is a suit or action contemplated and therefore precluded by the Settlement Agreement. However, a concealment proceeding is classified as an inquisitorial discovery proceeding that does not proceed in the same fashion as an ordinary civil action in which a plaintiff files a complaint and the defendant answers. *Fife v. Beck (In re Estate of Fife)*, 164 Ohio St. 449, 454, 132 N.E.2d 185 (1956). Rather, a concealment complaint notifies the probate court of alleged misconduct, and the probate court investigates the allegations to determine guilt or innocence based on the evidence presented by the parties. *Id.*

{¶ 56} Nevertheless, the distinction does not remove Norman's allegations of concealment from the ambit of an adversarial action or proceeding as contemplated by the term "dispute" in the Settlement Agreement. In his motion to remove Henoch, Norman alleged that Henoch either concealed or colluded with Carmen to conceal assets of Joshua's Estate. To gather proof for these allegations, Norman subpoenaed Carmen in February 2020, to produce documents and testify concerning the sale of Joshua's house and any assets that might have been

unwittingly or intentionally transferred with the house. If granted, Norman's motion would initiate an inquisitorial discovery proceeding that would have been adversarial in nature. Such a proceeding was precluded by the Settlement Agreement.

{¶ 57} To distinguish the Disputed Motions from adversarial proceedings, Weiser relies on *In re Estate of Damschroder*, 2021-Ohio-1558, 171 N.E.3d 1272 (3d Dist.) to support the proposition that the "Disputed Motions do not constitute lawsuits against Joshua's Estate in the same way [that] Ohio courts have held [that] filing exceptions to an inventory or accounting, objections to the sale of probate assets, or motions to remove a fiduciary do not constitute challeng[es to] the validity of a will." *See id.* at ¶ 20, citing *Estate of Riber v. Peters*, 12th Dist. Fayette Nos. 81-CA-27 and 81-CA-28, 1982 Ohio App. LEXIS 14339 (Oct. 27, 1982).

{¶ 58} *In re Estate of Damschroder* is factually and legally distinct. The case involved a pro se defendant named in a will contest because she was a beneficiary under the will. Instead of answering the complaint, the defendant wrote a letter confirming receipt of the inventory and questioning whether the inventory was complete. The trial court interpreted the letter as an answer. Another will beneficiary alleged that the letter in part amounted to participation in the will contest, which triggered the will's no-contest clause and disinherited the defendant. The court held that the defendant's questions about the inventory "constituted a legitimate request by a beneficiary invoking the trial court's authority to direct and control the conduct of the fiduciary." *Id.*

{¶ 59} Conversely, in this case, Norman voluntarily entered the Settlement Agreement with assistance of counsel. The Settlement Agreement's prohibitions differ from a no-contest provision in a will because Norman did not face possible disinheritance by raising exceptions to the inventory. Further, unlike the defendant in *In re Estate of Damschroder*, Norman also received and initially waived any objection to the inventory. Finally, the record shows that before and after Norman's exceptions, the probate court continued supervising Henoch's administration of Joshua's Estate by reviewing and approving Henoch's inventory in August 2018, reviewing and approving Henoch's request for extraordinary fees in July 2019, ordering Henoch to amend his final account in July 2019, and reviewing Henoch's amended final account in August 2019.

{¶ 60} Weiser argues in the alternative that even if the Disputed Motions were properly construed as adversarial proceedings or "disputes" under the Settlement Agreement, Norman initiated these proceedings against Henoch, as administrator, not against Joshua's Estate. To support this argument, Weiser adds that, if successful, such proceedings would increase, not deplete, the assets of Joshua's Estate.

{¶ 61} This argument again attempts to limit the Settlement Agreement's scope. Weiser does not dispute that Norman's entering the Settlement Agreement "for himself and on behalf of his executors" binds Norman as well as Norman's estate. Similarly, the covenants to which Norman agreed extend from the "Millstein Parties" to "their respective representatives," which includes Henoch as the

representative of Joshua's Estate. Moreover, Weiser's argument that pursuing Norman's concealment claims would increase, not deplete, the estate's assets assumes that the cost of litigating these claims would outweigh any benefit that recovery of the assets would garner for the estate. Dianne's withdrawal of her support for and later contesting of these claims was motivated in part by this concern. The probate court also found that despite Weiser's insistence that the Settlement Agreement arose from unrelated trust litigation, it had been executed to prevent Norman or his representatives "from continuing to waste beneficiary and Court resources by continued and often frivolous filings in every action to which he was a party."

{¶ 62} Lastly, Weiser argues that the probate court's interpretation of the Settlement Agreement violates public policy because it permits the probate court to abdicate its duty to hear Norman's exceptions to Henoch's inventory and accounting, consider Norman's concerns about Henoch's impartiality, and supervise Henoch's administration of Joshua's Estate. This argument forms the basis of Weiser's second and third assignments of error.

{¶ 63} We review a probate court's approval or denial of an inventory and appraisal for an abuse of discretion. *In re Estate of Jenkins*, 8th Dist. Cuyahoga No. 107343, 2019-Ohio-2112, ¶ 33, citing *In re Estate of Brown*, 8th Dist. Cuyahoga No. 103867, 2016-Ohio-3074, ¶ 12. We likewise review a probate court's decision to remove or not to remove the administrator of an estate for an abuse of discretion. *Castro v. Castro*, 8th Dist. Cuyahoga No. 99037, 2013-Ohio-1671, ¶ 11. A court

abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable. *Blackmore v. Blackmore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). A decision is unreasonable when "'no sound reasoning process * * * would support that decision.'" *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 64} As noted above, the probate court did not abandon its duty to supervise Henoch's administration of Joshua's Estate. The probate court reviewed and approved Henoch's inventory and request for fees without objection from Norman. The probate court also reviewed the final accounting and ordered Henoch to amend it. Weiser points to nothing in the record that was not already before the probate court when the court reviewed Henoch's inventory, final accounting, and request for extraordinary fees. The record shows that the probate court reviewed Henoch's inventory, final accounting, and request for extraordinary fees and found nothing incorrect or improper. Weiser points to nothing in the record showing that the probate court's review and approval of the inventory and accounting were unreasonable or that its supervision and direction of Henoch was arbitrary. We therefore find no abuse of discretion in the probate court's approval of the inventory and accounting or its decision not to remove Henoch as administrator.

{¶ 65} Weiser has failed to show that the broad language of the Settlement Agreement did not contemplate and therefore preclude the Disputed Motions as initiating adversarial proceedings or "future disputes." Weiser has also failed to show that the Settlement Agreement did not contemplate Henoch, in his capacity as

administrator of Joshua's Estate, as a "representative" of one of the Millstein parties against whom Norman promised not to initiate any adversarial proceedings. Finally, Weiser failed to show that the probate court's determination that the Settlement Agreement precluded the Disputed Motions was tantamount to abdicating its responsibility to review and approve Henoch's inventory and accounting and supervise Henoch's administration of Joshua's Estate.

**{¶ 66}** Weiser's three assignments of error are overruled.

**{¶ 67}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, ADMINISTRATIVE JUDGE

FRANK D. CELEBREZZE, JR., J., and
JAMES A. BROGAN, J.,* CONCUR

*(Sitting by assignment: James A. Brogan, J., retired, of the Second District Court of Appeals)